UNITED STATES of America, Plaintiff-Appellee,

v.

Kirksey McCord NIX, Jr., Defendant-Appellant.

No. 72-1323

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Aug. 1, 1972.

Certiorari Denied Nov. 13, 1972.
See 93 S.Ct. 455.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Wayne Douglas Mancuso, Gretna, La. (Court-appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Harry R. Hull, Jr., Mary Williams Cazalas, Julian R. Murray, Jr., Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Kirksey McCord Nix, Jr. was charged in a two-count indictment alleging that (1) he acquired a firearm from a licensed dealer in firearms by knowingly and unlawfully furnishing and exhibiting a false, fictitious, and misrepresented identification which was likely to deceive the dealer with respect to the lawfulness of the sale of the firearm, in violation of 18 U.S.C. § 922(a) (6) and 18 U.S.C. § 924(a); and (2) with making a false statement which was likely to deceive a licensed dealer with respect to a material fact to the lawfulness of the sale and disposition of such firearms, in violation of 18 U.S.C. § 922(a) (6).

Nix's first trial ended in a mistrial when the jury could not agree on a verdict. This case involves his subsequent retrial on which he was found guilty on both counts. He was sentenced to serve five years' imprisonment on Count I. Imposition of sentence on Count II was suspended and Nix was placed on supervised probation for a period of five years on Count II, the sentence to run consecutively with that imposed on Count I. We affirm.

■ On April 9, 1971, Nix purchased from Phillip C. Spedale, owner and a licensed firearms dealer of Crescent Gun and Repair Company, New Orleans, an M–1 carbine for $105.95 in cash. Spedale filled out Firearms Transaction Record Form 4473 provided by the United States Treasury Department and his own standard invoice form. He used information given to him by Nix and contained on a Louisiana chauffeur's license presented by Nix who represented himself as "Charles Tom Ward" and presented the chauffeur's license in that name as proof of identification. Nix signed the Form 4473 as "Charles Tom Ward." Spedale testified that Nix told him he had never been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. Accordingly, Spedale recorded this information on Form 4473. Spedale positively identified Nix as the individual who represented himself as Charles Tom Ward and who purchased the M–1 carbine in question. At the time the purchase was made, however, Nix had been convicted on a plea of guilty to the crime of attempted bribery in Georgia state courts, which conviction was punishable by imprisonment for a term in excess of one year. Taking the view of the evidence most favorable to the Government, there was substantial evidence on which the jury could have found Nix guilty on each count, see Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■■ Nix first claims that the District Court erred in ordering him to give

a handwriting exemplar, in permitting the United States Attorney to comment on his failure to comply with the Court's order in his closing arguments to the jury,[1] and in charging the jury that if it found beyond a reasonable doubt that Nix had in fact failed to comply with the Court's order, it might infer that the comparison of such samples of Nix's handwriting with the signature on Form 4473 would be unfavorable to the defendant and favorable to the Government.[2] Nix contends that the Fourth Amendment requirement of probable cause prohibits issuance of an order to compel handwriting samples absent a showing of probable cause. The Circuits are divided on the point.[3] We agree with Chief Judge Friendly of the Second Circuit that "Handwriting and voice exemplars fall on the side of the line where no reasonable expectation of privacy exists," United States v. Doe, 2 Cir., 1972, 457 F.2d 895, 898, and consequently outside of the protection of the Fourth Amendment. Id. at 899. See also United States v. Doe, 2 Cir., 1968, 405 F.2d 436; United States v. Vignera, S.D.N.Y., 1969, 307 F.Supp. 136. Cf. United States v. McNeal, 5 Cir., 1972, 463 F.2d 1180. The rationale for this result is plain: "For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words of Lord Hardwicke) has a right to every man's evidence." 8 J. Wigmore, Evidence § 2192 at 70 (McNaughton rev. 1961).[4]

Even if the more restrictive standards intimated by the Seventh and Eighth Circuits cited in footnote 3 were applicable here, they were satisfied. The District Court held a hearing on the Government's motion to compel the handwriting exemplars. An Assistant United States Attorney explained to the Court that Nix had been identified as the individual who made a false statement on a Treasury Form No. 4473, used at the time of acquisition of a firearm; that he had not previously been convicted of a felony; that he so stated by signing the name Charles Tom Ward on the Form 4473. Nix had previously been indicted in this case by the Grand Jury, which charged that in connection with the acquisition of a firearm from a licensed dealer in firearms, Nix "did knowingly and unlawfully make a false and fictitious written statement on Department of Treasury Internal Revenue Service Form 4473 that among other things, he had not been convicted of a crime punishable by imprisonment for a term exceeding one year . . . ." when the contrary was true. The District Court noted that the Government's desire to obtain a handwriting specimen directly related to the substantive count with which the defendant was charged. The District Court's conclusion that there would be no invasion of Nix's

1. The District Court held a hearing on the Government's motion to compel Nix to provide the exemplars, following which the Court granted the motion and ordered Nix to comply. When Nix refused to comply with the order, he was ruled into Court by the Government and again ordered by the Court to comply in its presence. He again refused and was found in contempt of court by the District Judge.

2. The Court cautioned the jury that it was not required to draw such inferences and that it might refuse to do so, as the jury was the sole trier of the facts.

3. See and compare United States v. Doe, 2 Cir., 1972, 457 F.2d 895, with In re Dionisio, 7 Cir., 1971, 442 F.2d 276, and United States v. Harris and United States v. Long, 8 Cir., 1972, 453 F.2d 1317.

4. Accordingly, there is no violation of the Fifth Amendment where a defendant is ordered to give handwriting exemplars. See Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schoenbrun v. United States, 5 Cir., 1968, 403 F.2d 56; United States v. McGann, 5 Cir., 1970, 431 F.2d 1104; Granza v. United States, 5 Cir., 1967, 381 F.2d 190.

Fourth Amendment rights under such circumstances is correct. The Court's charge to the jury and the prosecutor's comments to the jury on Nix's refusal to comply with the Court's order were not improper under the circumstances. See United States v. Doe, 2 Cir., 1968, 405 F.2d 436, 438. See also Higgins v. Wainwright, 5 Cir., 1970, 424 F.2d 177, cert. denied, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970); United States v. Parhms, 9 Cir., 1970, 424 F.2d 152, 154–155; People v. Hess, 1970, 10 Cal. App.3d 1071, 90 Cal.Rptr. 268, 43 A.L. R.3d 643.

■ Nix also argues that the District Court erred in denying his motion to suppress evidence seized during a search of an apartment at 4114 Encampment Street, New Orleans. The District Court held that Nix had no standing to contest the search and alternatively that the search was justified on the basis of consent. The M–1 carbine purchased by Nix was found at the Encampment address. On April 21, 1971, prior to Nix's indictment, agents of the Federal Bureau of Investigation sought to execute fugitive warrants against James Ratcliff Knight and Mike Falmaghetti, who were thought to be residing at the Encampment Street address. Knight was apprehended and arrested on the premises. After a brief interrogation of Knight, agents searched various rooms in the apartment and discovered an M–1 carbine in the room where Falmaghetti supposedly resided. The carbine was subsequently traced to Nix. The evidence showed that Nix had visited the apartment on only one occasion. The apartment was rented by John Fulford who paid half of the rent. Knight paid the other half of the rent. Fulford testified that Nix came over only one time to visit him, that Nix was not living there, but that he could have had access to the apartment as his place of residence if he wanted. Nix was not present at the time of the search and seizure in question. It is apparent that Nix had no right of control of the premises. Accordingly, the District Court's conclusion that Nix had no standing to object to the search was correct. See Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1967); United States v. Sanchez, 5 Cir., 1971, 449 F.2d 204; United States v. Kilgen, 5 Cir., 1971, 445 F.2d 287, 289.[5]

Thirdly, Nix contends that the District Court erred in refusing to continue the trial and to grant a change of venue because of extensive adverse publicity. The motion was filed on November 4, 1971, four days prior to the trial. In his motion, Nix alleged that he had received a large volume of radio, newspaper, and television publicity, that he was being put to trial for the third time in the same city within a period of five weeks,[6] and that his trial in state court for murder had ended in a mistrial due to inability to select a jury because of pretrial publicity, ultimately resulting in a change of venue in the state court proceedings. The record contains numerous newspaper clippings relating to Nix's involvement in both state and federal courts and shows that Nix was a major news item in the New Orleans area. He received extensive coverage in the papers. He alleged similar exposure on radio and television stations.

The District Court denied Nix's motions without an evidentiary hearing. The Court had denied a similar motion

---

5. It is unnecessary to consider the District Court's alternative finding that the search was justifiable on the basis of consent provided by certain of the residents of the apartment.

6. Beginning on September 29, 1971, Nix was tried in federal court on the indictment involved herein. That trial resulted in a mistrial when the jury could not reach a verdict. Commencing on October 11, 1971, he was tried in Louisiana state court for murder. On October 13, 1971, a mistrial was declared in the state court because a fair and impartial jury could not be selected. On November 8–9, 1971, he was tried a second time in federal court, which trial resulted in the conviction under consideration herein.

filed by Nix prior to his first trial in federal court. The first trial resulted in a mistrial when the jury could not agree on a verdict. In denying the first motion the Trial Judge indicated that he would attempt to determine any impartiality resulting from the publicity at the time the jury was selected. The Court's ruling on Nix's subsequent motion for a change of venue of the second trial was in part predicated on the Court's earlier experience with the case. The Court stated that the basic reason for denying the motion was that the jurors came from all over the district, many from rural areas and many from local areas, who, experience had shown, did not read the newspapers or hear television. Noting that the only additional publicity presented by the defendant at the second motion consisted of publication between the time of the first trial and the second trial, the Court stated that at the last trial "we had a venire of fifty jurors, only five of whom had ever indicated they heard of him." The Court concluded that there was no prejudice and that the defendant could obtain a fair trial. Similarly, the Trial Court denied Nix's motion for a continuance because "based on the Court's experience in selecting a jury the last time, the Court did not feel there would be any difficulty in getting an impartial jury." There is no evidence in the record to show that the jury which heard the case was actually prejudiced.[7]

Where there is a reasonable likelihood that pretrial publicity has been prejudicial to the rights of an accused so that it would prevent a fair trial, the trial may be continued for a sufficient length of time so that public excitement will subside and lessen the chance that the jury will be prejudiced. However, whether to grant such a continuance is a matter addressed to the sound discretion of the district court. Welsh v. United States, 5 Cir., 1968, 404 F.2d 414; Silverthorne v. United States, 9 Cir., 1968, 400 F.2d 627; United States v. Medlin, 6 Cir., 1965, 353 F.2d

7. The District Judge also stated:
"This Court has had sufficient experience with this defendant and choosing juries for this defendant to be well aware that there is no such feeling in the community against the defendant. Indeed, as the Court has repeatedly pointed out, out of the total of the venire of perhaps a hundred jurors brought in for the two trials of the defendant, I don't think over ten indicated that they had ever heard of the defendant and of those ten, only one or two indicated that they might have some prejudice. So that out of the examination that the Court has had, the Court does not feel that there is any sufficient prejudice The Court is not unaware that a change of venue was granted to the defendant in the State Court following, according to the newspaper, an unsuccessful attempt to impanel a jury although the record in this case does not reflect it, the newspapers carried it widely and counsel reported it to the Court. In this connection, the Court can only comment that I think the primary difference is due to the difference in jury selection and in the area from which the jury—the potential jurors was brought. Our juries are brought from all over the district, from areas where they would not have witnessed the publicity and as evidenced by their statements when they were questioned here on voir dire, they didn't know. On the otherhand, [sic] the prospective jurors in State Court proceedings obviously did not and as well as I understand it, three days transpired and seventy-four venire men were questioned and only one juror was selected. Another factor might be the fact that our method of selecting the jury does not permit injecting fear into the minds of the jurors. That the courtroom, at all times, during the course of this trial was maintained by the Court and by specific instructions of the Court without any armed guards or other such indications that members of the jury panel might have felt that there was something unusual about this defendant. From what the Court has seen in the press, this was not the case in the State Court proceedings. So, the Court is completely satisfied that not only the change of venue was improper, but that the defendant received a fair trial from the jury that was selected. The same comments that I just made cover the next ground stated with regard to prejudicial publicity and the desire for a continuance."

789, cert. denied, 384 U.S. 973, 86 S.Ct. 1860, 16 L.Ed.2d 683 (1966), rehearing denied, 385 U.S. 889, 87 S.Ct. 14, 17 L. Ed.2d 123 (1966). Similarly, it is within the discretion of the trial court to conduct an appropriate voir dire examination of prospective jurors to ascertain whether they have been influenced by pretrial publicity they may have heard or read, and the trial court has wide discretion in ruling on issues of prejudice resulting from what prospective jurors have heard or read. See Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); Gordon v. United States, 5 Cir., 1971, 438 F.2d 858; United States v. Manning, 5 Cir., 1971, 440 F.2d 1105. Moreover, whether or not a change of venue is required depends on whether "there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district," Fed.R.Crim.P. Rule 21, and is also a matter addressed to the sound discretion of the district court. See Addison v. United States, 5 Cir., 1963, 317 F.2d 808, cert. denied, 376 U. S. 905, 84 S.Ct. 658, 11 L.Ed.2d 605 (1964); Greenhill v. United States, 5 Cir., 1962, 298 F.2d 405. We discern no abuse of discretion on the part of the

District Court under the particular facts of this case. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. State of Texas, 381 U. S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); United States v. Wood, 299 U. S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936); and Irvin v. Dowd, 366 U.S. 717, 81 S. Ct. 1639, 6 L.Ed.2d 751 (1961), relied on by appellant, are inapposite on their respective facts.

We have carefully considered Nix's remaining claims of error,[8] and find no merit in any of them.

Affirmed.

---

8. Nix also claims that the Court erred as follows: (1) in allowing introduction into evidence photograph of the defendant which was not that used for identification by witness Spedale, but which was a copy of the one used; (2) in allowing the prosecution to ask witness Fulford whether he was a codefendant of Nix on charges pending against him in state court; (3) in allowing a witness to testify on rebuttal who was present in the courtroom for part of the testimony of other witnesses and whose testimony was cumulative of other evidence presented; (4) in denying a motion for acquittal where the Government's case was based on one eyewitness's testimony which was contradicted by two defense witnesses; (5) by retiring the jury for the night and not declaring a mistrial after the Court was informed by the jury that it was at an impasse and irrevocably deadlocked at a count of 10 guilty and 2 not guilty; (6) in denying defendant's motions for a new trial, to arrest judgment, to dismiss the indictment, to set aside the verdict of the jury and to enter judgment of acquittal or in the alternative to have a new trial, to quash the indictment, and to declare the proceedings wherein the defendant was convicted a mistrial; and (7) in not setting aside the verdict of the jury and entering a judgment of acquittal on the ground that the verdict was contrary to the law and evidence in that the Government did not prove beyond a reasonable doubt a nexus between the weapon involved and interstate commerce. Finally, Nix claims that 18 U.S.C. § 922(a) (6) is unconstitutional in light of United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), a contention expressly rejected by this Court in United States v. Nelson, 5 Cir., 1972, 458 F.2d 556. See also United States v. Lebman, 5 Cir., 1972, 464 F.2d 68; United States v. Laisure, 5 Cir., 1972, 460 F.2d 709.