UNITED STATES of America

v.

Jay E. LENTZ

No. 1:01 CR 150.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 17, 2006.

Erik R. Barnett, Patricia M. Haynes, Steven D. Mellin, United States Attorney's Office, Alexandria, VA, for United States of America.

### MEMORANDUM OPINION

ELLIS, District Judge.

In the pretrial phase of this kidnapping and murder prosecution, defendant has refused to comply with a Court order compelling him to provide the government with specific handwriting exemplars. At issue prior to trial, therefore, is whether

defendant's refusal to provide these handwriting exemplars entitles the government to a jury instruction concerning inferences that may be drawn from defendant's refusal.

## I.

A brief summary of the case is helpful to place the issue in context.[1] On April 24, 2001, defendant Jay E. Lentz (Lentz) was charged with the kidnapping and murder of his ex-wife, Doris Lentz (Doris), in violation of 18 U.S.C. § 1201(a). Because neither Doris' body nor a murder weapon were ever found, the government's case against Lentz in the first trial was largely circumstantial. In this regard, the government presented evidence in the course of the June 2003 trial tending to show, *inter alia*, (i) that Lentz had physically and verbally abused Doris during their marriage; (ii) that, based on a prior arrangement between Doris and Lentz, Doris had driven to Lentz's house to pick up their daughter, Julia, on the day Doris disappeared; (iii) that Doris had told her mother, boyfriend, aunt, and friend that she was going to Lentz's house in Maryland to pick up Julia on the day she disappeared; (iv) that within days of Doris' disappearance, her car was found abandoned in a District of Columbia parking lot, unlocked, and with her purse and keys in plain view; (v) that there were blood stains in the car's interior, nearly all of which contained Doris' DNA; (vi) that one of the blood stains in Doris' car was a match for Lentz's DNA; and (vii) that the driver's seat of Doris' car

had been adjusted to fit someone who (like Lentz) was much taller than Doris.

After two weeks of trial and approximately five days of jury deliberation, the jury ultimately convicted Lentz of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a). Despite this jury verdict, the district court entered a judgment of acquittal on the ground that the government's evidence was insufficient to meet the holding requirement of the charging statute.[2] Nonetheless, because certain prejudicial evidence that had been excluded in the course of the trial had found its way into the jury room, the district court also ordered a new trial. *See United States v. Lentz*, 275 F.Supp.2d 723 (E.D.Va.2003), *rev'd in part*, 383 F.3d 191 (4th Cir.2004). On appeal, the Fourth Circuit reversed the trial court's judgment of acquittal, but upheld the grant of a new trial. *See United States v. Lentz*, 383 F.3d 191 (4th Cir.2004). Accordingly, the matter was remanded for a new trial before a different district judge, which trial is currently scheduled to commence on February 27, 2006.

## II.[3]

Following the Fourth Circuit's remand order, the case took a surprising twist. Specifically, on May 19, 2005, the government, in an *ex parte*, under seal pleading, represented that it had obtained information from inmate Christopher Jackmon—who was incarcerated with Lentz at Northern Neck Regional Jail (NNRJ) from late 2004 until early 2005—concerning an alleged murder-for-hire plot undertaken by

---

**1.** For a more detailed recitation of the facts of this case, see *United States v. Lentz*, 383 F.3d 191 (4th Cir.2004).

**2.** *See* 18 U.S.C. § 1201(a) (providing, in pertinent part, that "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away *and holds for ransom or reward or otherwise* any person" shall be guilty

of a violation of this statute) (emphasis added).

**3.** It is the content of this section that compels the temporary sealing of this memorandum opinion. *See United States v. Lentz*, 1:01cr150 (E.D.Va.) (sealing orders).

Lentz during his incarceration. In this regard, Jackmon is prepared to testify at the new trial that Lentz had discussed the instant prosecution with him and had solicited Jackmon's help in a plot to kill certain key prosecution witnesses Lentz believed had provided especially damaging testimony in the first trial, as well as one or both of the prosecutors in his case. The government also intends to present evidence of three telephone conversations that occurred on January 10, 2005, between Lentz and his attorney that the government believes corroborates Jackmon's story.[4] Additionally, and of particular relevance here, the government intends to present certain documents related to the instant prosecution that were allegedly handwritten by Lentz and subsequently provided by Lentz to Jackmon while the two were incarcerated together at the NNRJ.

In light of these handwritten documents obtained by the government, by Order dated December 14, 2005, Lentz was directed to "give handwriting exemplars and prints in such names and number as may be requested by any special agent of the Federal Bureau of Investigation." *See United States v. Lentz,* 1:01cr150 (Dec. 14, 2005) (Order). Significantly, this Order was not opposed by counsel for Lentz and was entered based on representations from the government that a handwriting expert would be able to make a conclusive determination as to whether Lentz had actually authored the handwritten documents in question by comparing those documents with handwriting exemplars provided by Lentz in a controlled environment.

Counsel for the government and Lentz thereafter worked together to arrange for two FBI special agents to meet with Lentz in the Alexandria Detention Center on December 28, 2005, to obtain the Court-ordered handwriting exemplars. Lentz's counsel was present at the time of this meeting. Yet, when the FBI agents arrived at the detention facility, Lentz refused to provide the requested handwriting exemplars and instead informed the agents that "You can tell the judge to use the letters I sent him to compare my handwriting," or words to that effect.[5] Following a brief consultation with his counsel, Lentz further advised the agents that he would "respectfully decline" to provide the exemplars at that time, but that he might consider doing so at a later date.

Given defendant's refusal to comply with the December 14, 2005 Order, the government, by counsel, filed a motion on

---

**4.** In a memorandum opinion dated August 22, 2005, defendant's motion to suppress the recordings of these telephone calls and to preclude their disclosure to the government's trial team under either the attorney-client privilege or the Sixth Amendment right to counsel was denied. *See United States v. Lentz,* 1:01cr150 (E.D.Va. Aug. 22, 2005) (Memorandum Opinion).

**5.** Lentz has sent several *ex parte* communications to the Court throughout the course of these proceedings, despite repeated admonitions not to do so. Most recently, on January 19, 2006, the Court received an *ex parte* communication from Lentz consisting of two handwritten notes contained in an envelope that itself included a handwritten note. Although Lentz sought to offer these notes as his Court-ordered handwriting exemplars, these *ex parte* communications are clearly insufficient in this regard as they were neither written in a controlled situation nor written in the style required of an appropriate handwriting exemplar. Even defendant himself recognizes in his *ex parte* communication that a handwriting exemplar must include the same wording as the questioned document, written twenty times. Indeed, such repetition allows an expert handwriting analyst to evaluate, *inter alia,* whether the defendant was purposefully attempting to conceal idiosyncracies of his own handwriting style when producing the exemplar. *See generally Forensic Identification of Handwriting,* 27 Am.Jur. Proof of Facts 3rd 489 (updated Sept. 2005).

January 6, 2006, requesting that Lentz be required to provide the Court-ordered handwriting exemplars in open court. The government also sought permission to adduce at Lentz's new trial evidence of his refusal to provide the Court-ordered handwriting exemplars. Shortly thereafter, on January 17, 2006, Lentz appeared in open court, with counsel, and persisted in his refusal to provide the required handwriting exemplars to the government. As a result, by Order dated January 17, 2006, the parties were directed to file simultaneous briefs by January 20, 2006, addressing the appropriate inferences, if any, to be drawn from Lentz's refusal to provide the Court-ordered handwriting exemplars. *See United States v. Lentz*, 1:01cr150 (E.D.Va. Jan. 17, 2006) (Order). The parties have now filed their respective memoranda on this issue and the matter is ripe for disposition. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.

## III.

■ The starting point in the analysis is the Fifth Amendment to the United States Constitution. In this regard, it is axiomatic that the Fifth Amendment prohibits a prosecutor from commenting on a defendant's failure to testify or to present testimonial evidence in the course of a criminal trial. *See Howard v. Moore*, 131 F.3d 399, 421 (4th Cir.1997) (recognizing that the "Fifth Amendment forbids comment by the prosecution on a defendant's failure to testify") (citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)). Yet, the Supreme Court has made clear that "[a] mere handwriting exemplar...is an identifying physical characteristic outside [the Fifth Amendment's] protection." *Gilbert v. California*, 388 U.S. 263, 266–67, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).[6] This is so because "[t]he handwriting itself (as opposed to the content of a written statement) is physical, not testimonial evidence." *United States v. McDougal*, 137 F.3d 547, 559 (8th Cir.1998) (citing *Gilbert*, 388 U.S. at 266–67, 87 S.Ct. 1951). Thus, it is settled that a defendant in a criminal case may be compelled to furnish a handwriting exemplar and it is also settled that "introducing samples of the defendant's handwriting at trial do[es] not violate the Fifth Amendment privilege against self-incrimination." *McDougal*, 137 F.3d at 559. A prosecutor is likewise permitted to comment on,[7] and indeed present evidence of,[8] a defendant's refusal to provide a

---

**6.** It has also been held that "[h]andwriting and voice exemplars fall on the side of the line where no reasonable expectation of privacy exists...and consequently outside of the protection of the Fourth Amendment." *United States v. Nix*, 465 F.2d 90, 93 (5th Cir. 1972) (citations omitted); *see also United States v. Mara*, 410 U.S. 19, 21–22, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (recognizing that in addition to the Fifth Amendment, there also is no legitimate Fourth Amendment interest violated by the compulsory production of characteristics exposed to the public).

**7.** *See, e.g., United States v. Knight*, 607 F.2d 1172, 1177 (5th Cir.1979) (recognizing that "[h]andwriting exemplars fall outside the protection of the Fourth [and Fifth] Amendment[s] and comment on the refusal to provide an exemplar is permissible") (citations omitted).

**8.** *See, e.g., United States v. Blakney*, 581 F.2d 1389, 1390 (10th Cir.1978) (stating that "if the exemplars would provide probative and relevant evidence in the case there would seem no merit in the claim of prejudice when questions were asked which brought out the refusal to provide them"); *United States v. Franks*, 511 F.2d 25, 36 (6th Cir.1975) (recognizing that "[e]vidence that [defendant] refused to comply with the court order [to provide a voice exemplar]...is admissible") (citations omitted).

handwriting exemplar if he was directed to do so, as involved here.[9] Additionally, "[e]vidence that the defendant attempted to disguise his or her handwriting is also permissible, since otherwise the defendant could frustrate the government's right to obtain a sample." *McDougal,* 137 F.3d at 559 (citations omitted).

In light of these settled principles, it is clear that the December 14, 2005 Order directing Lentz to provide handwriting exemplars to the government did not infringe his constitutional rights in any respect. And, it is equally clear that Lentz does not enjoy a constitutional right to refuse to comply with the December 14, 2005 Order, as he has chosen to do in this instance. *See In re Braughton,* 520 F.2d 765, 767 (9th Cir.1975) (holding that there is "no general right to refuse to obey an order to make a handwriting exemplar which on it face contains no request for testimonial matter"); *United States v. Blakney,* 581 F.2d 1389, 1390 (10th Cir. 1978) (recognizing that "defendant had no right to withhold the [requested] exemplars").

■ Given these conclusions, it is now necessary to determine the extent to which evidence of Lentz's refusal to provide the Court-ordered handwriting exemplars can be used by the government in the course of the new trial. In this regard, the government, in its respective pleadings, argues that it should be entitled to offer evidence of Lentz's refusal to provide the Court-ordered handwriting exemplars as

evidence "tending to prove his guilt of the offense charged." *United States v. Askew,* 584 F.2d 960, 963 (10th Cir.1978) (finding that a "comment on defendant's refusal to comply with a lawful order to produce handwriting exemplars as an indication of guilt was proper..."). The government likewise requests an instruction permitting the jury to reach the adverse inference that Lentz's refusal to provide the handwriting exemplar can be viewed as evidence of his consciousness of guilt for the charged offense.

Lentz, however, takes a contrary position, arguing that evidence of his refusal to provide the Court-ordered handwriting exemplars can be used, at most, to invite an adverse inference as to authorship of the questioned handwritten documents. In other words, Lentz contends that his refusal to provide the handwriting exemplars can only be used to permit an inference that had he provided the exemplars to the government as directed, then the results of the handwriting analysis performed by the government's expert would have been favorable to the government and unfavorable to him; that is, that a comparison of Lentz's handwriting exemplars with the questioned handwritten documents in the government's possession would have revealed that Lentz was indeed the author of the questioned documents.

Although the Fourth Circuit has not squarely addressed this issue, published authority from other circuits is divided on this question, but the better reasoned, ap-

---

**9.** Only one circuit has held that a comment by the prosecutor on a defendant's failure to produce a requested handwriting exemplar constituted a violation of the Fifth Amendment. Specifically, in *United States v. White,* 355 F.2d 909, 912 (7th Cir.1966), the Seventh Circuit stated that "evidence introduced by the Government...with respect to [defendant's] failure to cooperate, by giving handwriting specimens...was not admissi-

ble...[and] constituted an attempt to obtain an inference of guilt from his refusal to cooperate, 'in violation of the spirit, if not the letter, of the Fifth Amendment' ". Yet, significantly, the Seventh Circuit's decision in *White* was rendered one year prior to the Supreme Court's express holding in *Gilbert* that a handwriting exemplar does not amount to testimonial evidence falling within the Fifth Amendment's protection.

posite decisions favor Lentz's "authorship" argument over the government's "consciousness of guilt" argument in the circumstances presented here. To be sure, several circuits have allowed the government to present evidence of a defendant's refusal to provide a handwriting exemplar as evidence of that defendant's consciousness of guilt for the offense charged, as the government here requests. *See, e.g., Askew*, 584 F.2d at 963 (holding in a prosecution for the interstate transportation of forged securities that the government was permitted to prove and comment on a "defendant's refusal to produce exemplars as tending to prove his guilt of the offense charged"). These decisions, however, are inapposite, as the defendant's handwriting or signature in those cases was critical to the ultimate issue of guilt or innocence for the charged conduct, as in a prosecution for tax fraud, credit card fraud, or some other offense where the government is required to establish that the defendant signed or prepared a particular document to establish the charged offense. *See, e.g., United States v. Nix*, 465 F.2d 90, 93 (5th Cir.1972) (where "the Government's desire to obtain a handwriting specimen directly related to the substantive count with which the defendant was charged"). The *Askew* decision is illustrative of this line of authority.

*Askew*, the primary case relied on by the government, involved a defendant charged with the interstate transportation of forged securities and thus, evidence of the defendant's handwriting and signature were at the heart of the government's case in chief.[10] Unlike the prosecution in *Askew*, authorship of the questioned handwritten documents involved here is not an element of the charged offense—kidnapping resulting in death. Defendant's refusal to provide the Court-ordered handwriting exemplar therefore does not carry the same significance to the ultimate issue of guilt or innocence of the charged crime as in a case involving forgery or false documents.

In the circumstances presented here, the more apposite line of authority consists of cases that allow the government to comment on, and to present evidence of, Lentz's refusal to provide the Court-ordered handwriting exemplar, but then to limit any adverse inference the jury is permitted to draw to authorship of the questioned documents. *See, e.g., Knight*, 607 F.2d at 1177 (approving a jury instruction stating that the jury may infer that the results of the handwriting analysis would have been unfavorable to the defense and favorable to the prosecution); *Nix*, 465 F.2d at 93 (approving a jury instruction permitting the jury to infer that the results of a handwriting analysis performed by the government expert would have been unfavorable to the defendant).[11] Limiting the adverse inferences

---

**10.** Similarly, in *Nix*—a case supporting Lentz's "authorship" argument rather than the government's "consciousness of guilt" argument—the defendant was charged with signing a false name to a form in connection with his purchase of a firearm. *Nix*, 465 F.2d at 93.

**11.** Thus, an appropriate instruction to the jury in this instance might be similar to the one approved in *Knight*, which provided, in pertinent part, as follows:

> Now ladies and gentlemen, you have heard evidence...that the defendant...refused to obey an order of the Court that he furnish handwriting specimens. And you have heard...that he was asked to furnish (handwriting specimens) for the purpose of...comparison (with) the handwriting obtained on certain documents and records. The law, ladies and gentlemen, provides that an order to furnish handwriting samples or exemplars is a lawful order. That order, therefore, in no way violated any of [defendant's] legal or constitutional rights.

allowed to be drawn from Lentz's refusal to provide the Court-ordered handwriting exemplar in this manner strikes an appropriate balance between the competing constitutional rights and interests of both Lentz and the prosecution. And, such a limited adverse inference is particularly appropriate in this instance in light of the fact that the government has in its possession several other handwriting samples prepared by Lentz in the course of these proceedings, albeit not the precise samples requested by the government.[12]

An appropriate Order will issue.

I charge you that the conduct of the defendant in refusing to furnish those handwriting specimens, if you find beyond a reasonable doubt that he did so refuse, is not alone sufficient to establish his guilt because innocent persons sometimes decline to give evidence to authorities even when ordered to do so. However, such conduct including all of the events related thereto, is a circumstance from which the jury may, if it chooses, reasonably draw the inference and find, in light of the surrounding circumstances, that the defendant...believed that the comparison of his handwriting with the signatures on the documents obtained by the Government would be unfavorable to (him) and favorable to the prosecution. The law does not require that you draw such an inference. You are the sole judges of the facts. Bear in mind that the law never imposes upon any defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

*Knight*, 607 F.2d at 1177. The precise wording of the jury instruction to be given in this case is a matter that will be determined in the course of the trial.

12. *See supra*, n. 5.