Lawrence Ray **ALBERTI**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46736.

Court of Criminal Appeals of Texas.

Nov. 28, 1973.

Kenneth L. Sanders, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough & Jack Bodiford, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Appellant was convicted of the offense of robbery by assault; punishment was assessed at 30 years' confinement.

Appellant's counsel raises six grounds of error and several additional grounds are brought forth by appellant in three pro se briefs. The sufficiency of the evidence is challenged.

It is argued that the evidence shows that appellant might have been just an innocent bystander and a victim of circumstances. The jury was charged on the law of circumstantial evidence. The record reflects the following evidence:

On October 22, 1970, three armed men wearing ski masks robbed the Bank of Almeda in Houston. They shouted obscenities, fired shots and managed to escape with over $29,000.00. A camera device was activated by a bank employee who saw the robbers enter the bank. Approximately thirty minutes after the robbery, F.B.I. agents observed a car parked behind an abandoned produce stand and two individuals standing by the automobile. The produce stand was located off a freeway approximately five miles from the scene of the robbery. The agents proceeded to the stand and observed one Jackie Dale Roberts kneeling at the front of the car changing the license plates. Appellant was there, standing by the car. A Houston police officer also testified that he was informed by a federal agent that both men were behind the stand changing the license plates on the car. That agent testified, without objection being voiced by defense counsel, concerning the fruit stand where he "saw these two defendants changing license plates on an automobile." The same agent testified that prior to the time of the instant offense he had received information from a reliable source that defendant Roberts had been involved in a bank robbery and the method of dividing up the money stolen was to proceed to this same produce stand and there allocate the proceeds.[1] At the time the federal agents observed Roberts and appellant behind the produce stand, they were en route to Roberts' home to question him concerning the robbery.

When the two accused were questioned at the scene about changing the license plates, Roberts responded, "Well, we didn't steal it, [referring to a license plate] someone gave it to me." He had initially told the officers it was stolen "from the neighborhood." The automobile was searched —two loaded pistols were found under the front seat and a sawed-off shotgun, three ski masks and a large amount of money were discovered in the trunk of the vehicle.

An expert witness testified that fibers recovered from appellant's hair soon after he was taken into custody were identical in color and composition to fibers removed from one of the ski masks found in the trunk.

Finally, the movie of the robbery taken by the camera in the bank was viewed by the jury. A witness to the robbery testified that the tallest robber was about the

---

1. The modus operandi in this previous robbery matches the one used in the instant case— ski masks, vulgar language shouted about and shots fired in the ceiling to announce the robbery.

same height and size as the appellant. Appellant offered no testimony. The evidence is sufficient to support the conviction.

In his next two grounds, appellant argues that the arrest and search were illegal. It is his contention that probable cause did not exist for either the arrest or search. We disagree.

■ When appellant and Roberts were first observed, some thirty minutes after the robbery, they were changing the license plates on an automobile. Certainly the officers were not acting unreasonably in detaining them at that point. Before searching the vehicle, the officers checked and found that the license plates did not match the registered plates for that automobile. See Arts. 14.01 and 14.03, Vernon's Ann. C.C.P., and Art. 812, Vernon's Ann.P.C. Co-defendant Roberts told the officers that the vehicle belonged to him; however, the officers wished to satisfy themselves as to its ownership, in light of the false license plates. A search of the glove box and sun visor proved fruitless, but two loaded pistols were found under the front seat. One of the pistols was a chrome .38 caliber revolver, the same type gun carried by "the tall gentleman" involved in the robbery. After finding the weapons, the officers ordered a search of the trunk which revealed the third weapon, the ski masks and the money.

■ The search of the automobile was not unreasonable under 4th Amendment standards. Appellant argues that a search warrant should have been procured; but he overlooks the fact that the search occurred only a few short minutes after the crime, under conditions which gave rise to adequate probable cause. Appellant mistakenly relies upon the case of Fry v. State, 493 S.W.2d 758 (Tex.Cr.App.1972) as authority for the illegal search argument. He argues that Fry is controlling and involves the "same basic fact situation." Such argument overlooks the granting by this Court of the State's motion for

rehearing and the eventual affirmance of that cause by a divided Court.

Fry need not be used as a method of legalizing the search in the present case, however, as a much stronger fact situation exists here. Rather than call it an unreasonable search, we conclude that it would have been unreasonable to not make the search, where two men are found changing license plates behind an abandoned produce stand, some five miles up the freeway from the scene of a robbery that occurred only thirty minutes before; further, the officers were first told that the plates were stolen "from the neighborhood" and then shortly thereafter, such theft of the plates was denied. There was testimony that the hood of the automobile was warm. Both doors were open and the two defendants were not handcuffed when the search began. See Madeley v. State, 488 S.W.2d 416 (Tex.Cr.App.1972); Imhoff v. State, 494 S.W.2d 919 (Tex.Cr.App.1973). The search was substantially contemporaneous with the arrest. This ground is overruled.

Appellant next contends that he was deprived of competent counsel. He points out that during the trial it was discovered that one of the jurors knew the appellant's father; appellant alleges on appeal that his retained trial counsel was ineffective since he did not seek a mistrial at that point. The record is contra to appellant's position —appellant's counsel did make a motion for mistrial, which the court overruled after determining that the juror would neither be prejudiced in appellant's favor or against him. No error is shown.

■ In his fifth ground, appellant states that he was prejudiced by the prosecutor referring to him as "Jesse James." This ground is neither briefed nor argued; appellant simply refers us to two places in the record. In the first of these, the prosecutor made a reference to the "Jesse James types." An objection was voiced and sustained; the motion for mistrial was overruled. The other instance in the record which appellant cites is irrelevant to

the issue raised. We conclude that the "Jesse James" statement was not so prejudicial as to deny appellant a fair trial.

 In the final ground, appellant challenges the propriety of permitting the jury to view the movie of the robbery, as recorded by the cameras in the bank. This ground of error is without merit. Appellant's complaints, such as the argument that the film was too fast, would go to the weight and not the admissibility of the evidence. A proper predicate was laid for the film's introduction and we perceive no error.

Appellant's well written pro se briefs have also been reviewed by this Court; however, no reversible error is brought to our attention by such briefs.

The judgment is affirmed.