**Nathan COTLAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 53802.

Court of Criminal Appeals of Texas.

Nov. 23, 1977.

Paul E. Licata and Marvin O. Teague, Houston, for appellant.

Carol S. Vance, Dist. Atty., Robert A. Shults and Jim Leitner, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for resisting arrest. After the jury returned a verdict of guilty, the court assessed punishment at a fine of $250.00.

Appellant contends that the court erred "in refusing to allow appellant to develop the statutory defense of excessive force on the part of the arresting officer by ruling inadmissible any evidence of appellant's treatment at the hospital immediately following his arrest including pictures of appellant's injuries taken the day after arrest."

The State urges that this ground of error is multifarious and therefore presents noth-

ing for review. While Art. 40.09, Sec. 9 provides that the brief "shall set forth separately each ground of error . . .," it further requires that a ground of error shall be reviewed if this Court "can identify and understand such point of objection."

Appellant's defense was bottomed on V.T.C.A. Penal Code, Sec. 9.31(c), which provides:

"(c) The use of force to resist an arrest or search is justified:

"(1) if, before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search; and

"(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary."

The court instructed the jury in the law on the use of force in resisting an arrest in accordance with Sec. 9.31(c), supra.

It appears undisputed that appellant, a medical doctor, was a passenger in a car driven by his wife just prior to his arrest on February 13, 1976. Appellant testified that he was en route to the hospital to "check on" a patient upon whom he had operated that morning. The car was stopped by Houston Police Officers Watson and Gosch for running a red light. Upon the vehicle being stopped, appellant went to the rear of the vehicle, where he met the officers. After some discussion, it was determined that Mrs. Cotlar did not have her driver's license in her possession. From this point on there is a sharp divergence in the versions of the events which transpired.

Officer Watson testified that appellant told him several times that he was a doctor on the way to the hospital and he advised the appellant it would take only about five minutes to write the tickets. According to Watson, appellant "kept interrupting" when he tried to talk to Mrs. Cotlar and told his partner that "she had a fine example of someone to be teaching her her profession." Watson advised appellant to be

quiet "and let me finish writing these two tickets" or "he would be arrested for interfering with a police officer." Appellant said, "let's go and started pushing the door in on me." Watson related that he was in a "squatting position by the door that was open in the car where his [appellant's] wife was sitting" when appellant "started pushing the door in on me." Appellant was told he was under arrest. Watson grabbed appellant's right arm and Gosch grabbed the left arm. Appellant "was struggling violently trying to get away. Throwing his arms back and forth kicking at me." After Watson asked his partner to call for assistance, appellant was handcuffed. Further testimony of the officer reflects that appellant continued to struggle and resist when he was placed in the police car. Watson specifically denied that he ever attempted to choke the appellant or that he had beaten his head against an iron pole.

The events that transpired on the occasion in question as related by appellant reflect that he was telling the police woman (Officer Gosch), a trainee, that she would be wise not to follow the tactics of this policeman (Officer Watson) when Watson ". . turned from my wife, and very caustically stated that he could put me in jail if he wanted to." Appellant stated that after he answered in a "very respectful" manner that he understood that he was a policeman and that "he could put me in jail," Watson was "putting handcuffs on me." Appellant related that these events ensued:

"Immediately afterwards, he had two arms, one across the front of my neck, the other over my chest. . . . In the position that I was in, he began squeezing and choking me with his forearm and wrist. . . . I was immediately in severe pain and short of breath, and I couldn't breathe. . . . There was severe pressure with his wrist and forearm on my neck and throat in this position, and my head was hyperextended— that is bent very far back. . . . he was pressing against my throat repeatedly. . . ."

Appellant further testified that Watson had beaten his head against an iron pole.

Appellant testified relative to the injuries received on the occasion in question and stated that he had pictures depicting these injuries. Counsel for appellant requested permission to set up a slide projector to show the pictures and the request was denied by the court.

Appellant's bill of exception reflects that the slides would reflect appellant's injuries and they would fairly and accurately portray the way appellant looked on the day following the incident in question. The court qualified the bill by noting that the evidence proffered was slides "and that there were no pictures offered."

In *Williams v. State,* 461 S.W.2d 614, in holding that color motion pictures depicting the offense in question were admissible, this Court quoted from Moses, "Scientific Proof In Criminal Cases—A Texas Lawyer's Guide," Sec. 10.04, p. X–5:

"It is common knowledge that the predicate for introduction of a photograph requires proof of (1) its accuracy as a correct representation of the subject at a given time, and (2) its material relevance to a disputed issue. Regarding ordinary photographs, a witness is not required to have seen a photograph made to testify as to its correctness. Although the photographer may authenticate the photograph, his testimony is not mandatory. All that is required of a witness who observed the object or scene depicted with his naked eye is testimony that the photograph truly and accurately represents that object or scene. Like still photographs, motion pictures are admissible in criminal prosecutions where they are properly authenticated, relevant to the issues and not violative of the rules of evidence for the admissibility of photographs." [Citations omitted.]

See also *Housewright v. State,* 154 Tex. Cr.R. 101, 225 S.W.2d 417; *Alberti v. State,* 501 S.W.2d 654; *Martin v. State,* Tex.Cr. App., 475 S.W.2d 265.

 We hold that slides, like still photographs and motion pictures, are admissible when they are properly authenticated, relevant to the issue, and not violative of the rules of evidence for the admissibility of photographs.[1]

Unlike *Fields v. State,* 500 S.W.2d 500, where this Court held that it could not pass upon the admissibility of color slides because they were not in the record, the slides in the instant case are a part of the bill and are in the record before us. Slides in the exhibit reflect bruises and abrasions to the head, knees, hands, side and under the chin of the person identified as appellant.[2]

As heretofore noted, there was a sharp conflict in the testimony relative to the amount of force used by the officers in arresting appellant. The slides reflecting bruises and abrasions on appellant constituted relevant evidence on this issue. We find that the court was in error in denying the admission into evidence of slides depicting appellant's injuries the day following the arrest.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

---

1. Unlike still photographs, which can generally be viewed by the court while the jury is in the box before they are admitted into evidence, moving pictures and slides should be viewed by the court out of the presence of the jury before their admissibility is determined.

2. In the event of retrial, the many slides in the exhibit should be reviewed to determine relevancy before they are admitted since we find one slide of a baby and others which may be repetitious in depicting injuries.