Guy  Walter  ROY,  Appellant,

v.

The  STATE  of  Texas,  Appellee.

Nos.  60068–60070.

Court  of  Criminal  Appeals  of  Texas,
Panel  No.  2.

Nov.  12,  1980.

Jake Cook, Fort Worth, court appointed, for appellant.

Tim Curry, Dist. Atty., William Kane and John Bankston, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appellant appeals from three convictions resulting from three separate indictments for burglary of a habitation. On appellant's motion the three offenses were consolidated into a single jury trial. The jury found in Cause No. 12,310, the November 2, 1977 burglary of the Pierce residence, that appellant had committed two previous offenses, and punishment was set at life imprisonment. In the other two burglaries, Cause No. 12,311, the burglary of the Fowler home on October 22, 1977, and Cause No. 12,312, the burglary of the Lundgren residence which occurred on or about October 24, 1977, punishment was assessed by the jury at 25 years for each offense.

The record shows that the evidence presented in all three offenses primarily consisted of a videotape made within 24 hours after each burglary occurred. These videotapes show appellant, James Barker, and in the Pierce burglary, a third party named James Jackson, selling the stolen property to undercover police agents. The police were working with the F.B.I. in a joint crime project code named "Operation Westwind." As part of Operation Westwind, the police had established a "business," the Shadetree Landscaping Company, in a warehouse and adjoining office. Operating out of this location, the undercover police and F.B.I. agents posed as "fences" and paid informants. They would take phone calls, and arrange a meeting to buy stolen property. The callers would come to the Shadetree Landscaping Company warehouse and sell the goods while the police videotaped the entire transaction. These videotapes show the participants unloading the goods, negotiating the price, and accepting the money. All three of the burglarized homes in the instant case, as well as the Shadetree Landscaping Company, were located in Tarrant County.

In appellant's first ground of error, he contends that the trial court erred in overruling his motion for a change of venue as a matter of law. Appellant's sworn motion was supported by the affidavits of two credible persons, pursuant to Article 31.03, V.A.C.C.P.[1] The State controverted the motion and submitted two affidavits; one executed by Assistant District Attorney Strickland, the other affiant was Deputy District Clerk Davis. The trial court held a pretrial hearing pursuant to Article 31.04, V.A.C.C.P.,[2] at which time the State presented these same two individuals as witnesses.

There is a well established precedent, as discussed in *Durrough v. State*, 562 S.W.2d 488 (Tex.Cr.App.1978), and *Stapleton v. State*, 565 S.W.2d 532 (Tex.Cr.App. 1978), that an accused is entitled to a change of venue as a matter of law when the State fails to contest the motion for a change of venue by controverting affidavits, and by evidence presented at a hearing

1. Article 31.03, V.A.C.C.P. provides that: "(a) A change of venue may be granted in any felony or misdemeanor case punishable by confinement on the written motion of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, residents of the county where the prosecution is instituted, for either of the following causes, the truth and sufficiency of which the court *shall* determine:

    1. That there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial; and

2. That there is a dangerous combination against him instigated by influential persons, by reason of which he cannot expect a fair trial. . . ."

2. Article 31.04, V.A.C.C.P. states: "The credibility of the persons making affidavit for change of venue, or their means of knowledge, may be attacked by the affidavit of a credible person. *The issue thus formed shall be tried by the judge, and the motion granted or refused, as the law and facts shall warrant.*"

on the motion. See also, *Wall v. State*, 417 S.W.2d 59 (Tex.Cr.App.1967). The same is equally true when the trial court denies a properly presented motion for a change of venue without conducting a pretrial evidentiary hearing; see *Henley v. State*, 576 S.W.2d 66 (Tex.Cr.App.1978) and *Hussey v. State*, 590 S.W.2d 505 (Tex.Cr.App.1979). This is not the situation presented here.

Instead, appellant contends that the State's controverting affidavits should both have been struck by the trial court, so that *ipso facto* he was entitled to a change of venue as a matter of law. The first reason advanced by appellant is that an assistant district attorney should not be considered "a credible person," within the meaning of Article 31.04, V.A.C.C.P., supra. We disagree. In *Mansell v. State*, 364 S.W.2d 391, 395 (Tex.Cr.App.1963) this Court specifically addressed this issue and held that the affidavit of the Liberty County Attorney was sufficient to raise fact issues requiring the introduction of evidence.[3] Because Article 31.04, V.A.C.C.P., supra, only requires the affidavit of "a" credible person, we need not reach the question of whether to strike the other affidavit executed by Deputy District Clerk Davis.[4] We hold that appellant was not entitled to a change of venue as a matter of law.

Moreover, since the trial court did conduct a pretrial evidentiary hearing, as this Court said in *Ward v. State*, 427 S.W.2d 876, 881 (Tex.Cr.App.1968):

"The trial court heard the evidence adduced by appellant in support of his motion for change of venue and which related to the means of knowledge of the compurgators and the existence of preju-

dice without objection, hence any insufficiency or defect in the State's controverting affidavit was not prejudicial. *Davis v. State*, 19 Tex.App. 201; *Lemons v. State*, 59 Tex.Cr.R. 299, 128 S.W. 416."

Here appellant raised no objection to the testimony of Deputy Clerk Davis during the hearing. Since the State also presented witnesses, such evidence also served to controvert appellant's motion. See *Henley*, supra. Neither does appellant raise the issue that the trial court abused its discretion by ruling adversely on the fact issues that were presented. Nor is there evidence that appellant was forced to take an objectionable juror, since the voir dire of the jury is not included in the record before us. Cf. *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr. App.1977) and *Von Byrd*, supra, at 890. We hold, therefore, that the trial court did not err in overruling appellant's motion for a change of venue. Appellant's first ground of error is accordingly overruled.

In appellant's second and third grounds of error he contends that the trial court erred in permitting the videotapes to be shown to the jury because the videotapes constituted an attempt to bolster the unimpeached testimony of the police officers. Appellant argues that since the police officers were permitted to fully testify as to the transactions that occurred between themselves, appellant and James Barker, the videotapes were not admissible. The cases cited by appellant lend no support for his argument because these cases all are concerned with identification testimony and set out the well established rule against bolstering this type of testimony. The issue of the admissibility of the videotapes falls

---

3. Although this case was decided under the old Article 567, V.A.C.C.P., the provision was identically incorporated into the present code and lives on, virtually unchanged, as Article 31.04, supra.

4. Appellant contends that her affidavit was not competent because her testimony adduced at the venue hearing was mere opinion. The affidavit itself is sufficient to raise an issue of fact requiring an evidentiary hearing. She testified, in essence, that the population of Tarrant County is in excess of 800,000; there are in excess of 300,000 qualified voters in Tarrant

County; she was aware of the publicity surrounding "Westwind" defendants and she felt that appellant could get a fair trial. Under cross examination, she said that this was just her opinion, and that she hadn't really discussed it. Thus her testimony goes to the sufficiency of the evidence and is a question to be determined by the trier of fact. See *Bell v. State*, 582 S.W.2d 800 (Tex.Cr.App.1979), *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App. 1978) and *Ransonnette v. State*, 522 S.W.2d 509 (Tex.Cr.App.1975).

within the admission requirements for scientific or tangible evidence.

■ Videotapes are a simultaneous audio and visual recording of events. As such, a predicate is required to establish their accuracy and reliability. This Court has unswervingly upheld the seven–pronged predicate for the admission of sound recordings that was first set forth in *Edwards v. State*, 551 S.W.2d 731, 733 (Tex.Cr.App.1977), as follows:

"(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement ... [W]e also find that at least some of the requirements can be inferred from the testimony and need not be shown with the same particularity required for admission of other mechanically acquired evidence ..."

See also *Bates v. State*, 587 S.W.2d 121, 131 (Tex.Cr.App.1979) and *Nacol v. State*, 590 S.W.2d 481 (Tex.Cr.App.1979).

■ This Court has also established the necessary predicate for the admission of motion pictures.[5] Although videotapes are motion pictures as well as sound recordings, we now hold that the *Edwards* predicate applies to videotapes. Moreover, because of the dual aspect of videotapes they convey a greater indicia of reliability than either film or sound tapes standing alone and at least some of the *Edwards* elements may also be inferred from the testimony.

■ Without indulging in a detailed recitation of each of the police officers' testimony, we merely observe that each of the *Edwards* elements of a proper predicate were either established by direct proof or could be inferred from the testimony. In addition, all of appellant's objections which were raised first in his motion to suppress, then reurged at several points during the trial, either did not complain of an improper predicate, or were too general to inform the trial judge or the prosecutor which of the admissibility requirements had not been met. See *Quinones v. State*, 592 S.W.2d 933 (Tex.Cr.App.1980) and *Harris v. State*, 565 S.W.2d 66 (Tex.Cr.App.1978). Neither can appellant seriously contend that these videotapes, showing the entire transaction from the starting point when appellant drove into the warehouse, unloaded the goods, and received his share of the money from the police, were not necessary or helpful in an understanding of the facts by the jury. Appellant's position, that anytime there is a witness who testifies to a transaction, thereafter all additional evidence constitutes bolstering, would act to exclude the introduction of all tangible and scientific evidence, even when a proper predicate has been laid. This contention finds no support in the case law. For these reasons, appellant's grounds of error number two and three are overruled.

■ Appellant next argues in his fourth ground of error that he was denied his right

5. The proper predicate for the admission of motion pictures is contained in *Williams v. State*, 461 S.W.2d 614, 616 (Tex.Cr.App.1970) wherein the Court, quoting from Moses, "Scientific Proof in Criminal Cases—A Texas Lawyer's Guide, § 10.04," said:

"It is common knowledge that the predicate for the introduction of a photograph requires proof of (1) its accuracy as a correct representation of the subject at a given time, and (2) its material relevance to a disputed issue ... All that is required of a witness who observed the object or scene depicted with his naked eye is testimony that the photograph truly and accurately represents that object or scene. Like still photographs, motion pictures are admissible in criminal prosecutions where they are properly authenticated, relevant to the issues and not violative of the rules established for the admissibility of photographs."

See also *Cotlar v. State*, 558 S.W.2d 16 (Tex.Cr. App.1977) and *Housewright v. State*, 154 Tex. Cr.R. 101, 225 S.W.2d 417, 418 (1950), in which the Court stated that "... such [motion] pictures are but a collection of photographs and are subject to the proof of being a true portrayal of the objects there shown."

of confrontation of witnesses as guaranteed in the 6th Amendment, United States Constitution, Article 1, Section 10 of the Texas Constitution, and Articles 1.05 and 1.22, V.A.C.C.P. Primarily he complains about the portions of the videotapes which contain statements made by James Barker. Barker had been subpoenaed by appellant and he appeared before the trial judge, stating that he chose to exercise his right not to testify. Therefore, appellant contends, he was denied the right to cross examine Barker. Furthermore, while appellant concedes that declarations of coconspirators are admissible, he first asserts that no conspiracy was shown, and secondly he argues that if there were a conspiracy, it had terminated prior to the videotaping of the sale of the goods. We disagree.

At the outset we note that appellant never raised, either by pretrial motion, nor during the trial itself, a hearsay objection, or complained about any extraneous offenses contained in the videotapes.[6] Our review, therefore, is limited to the error properly preserved. In *Quinones*, supra, at 944, in which appellant argued that the admission of the tape recording was an unconstitutional denial of his right to confront and cross examine a witness under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, (1968) this Court said:

> "*Bruton* held that it was improper to use the confession of a codefendant to inculpate the defendant in their joint trial where the codefendant does not take the stand. We doubt that the statements of Collins in the recorded conversation constitute a confession. In any event, this case does not present a *Bruton* problem because appellant is definitely inculpated by his own statements in the recording, not those of his codefendant. Cf., *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60

L.Ed.2d 713 (1979) (plurality opinion) (admission of defendant's 'interlocking' confession allows admission of nontestifying codefendant's confession). The damage which the recorded statements of Collins may have added to that done by appellant to himself, along with the other incriminating evidence, is so relatively insignificant that the admission of these statements was harmless error. See *Parker v. Randolph*, 99 S.Ct. at 2141–43 (1979) (Blackmun, J. concurring); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), *Simpson v. Wainwright*, 439 F.2d 948 (5th Cir.) cert. denied 402 U.S. 1011, 91 S.Ct. 2199, 29 L.Ed.2d 434 (1971) and *Carey v. State*, 455 S.W.2d 217 (Tex.Cr.App.1970)."

Throughout these videotapes are similarly damaging statements made by appellant. Two examples should suffice. In the videotape marked "State's Exhibit 10" and, while Barker was momentarily out of the room, appellant says:

> "We like to get rid of it [the goods] quick ... I been up all night, only 2 hours of sleep. I'm in a halfway house—just got out of the joint, man."

This conversation is excerpted from the videotape marked and dated as occurring at 11:00 a. m. on the morning of October 22, 1977. The testimony of Wanda Fowler showed that when she returned from an ice hockey game after midnight on the morning of October 22, 1977, she discovered her home had been burglarized. The property shown in the videotape was identified as belonging to her.

On the videotape marked "State's Exhibit 17" filmed at 3:29 p. m. on October 24, 1977, appellant and James Barker are seen negotiating the sale price for nine stolen guns and one crossbow with the undercover police. The police have offered $575 for the lot; appellant responds to Barker, who is

---

6. We reiterate the procedure suggested in a footnote contained in *Cotlar*, supra, at 18, in which the Court said:

> "Unlike still photographs, which can generally be viewed by the court while the jury is in the box before they are admitted into evidence, moving pictures and slides should be viewed by the court out of the presence of the jury before their admissibility is determined."

The same is true for videotapes; they should first be viewed by the trial judge to determine relevancy before they are admitted.

holding out for $600, by saying, "What's another $25." They are then seen splitting the money and joking about the uneven division. Mr. Lundgren testified that on the 25th of October his wife telephoned him while he was away on a fishing trip. She had just returned from staying with her mother and discovered their house had been burglarized. Mr. Lundgren identified the weapons by serial numbers that were previously in his possession, as well as viewing them at the police warehouse at the time he regained possession of them.

We believe that any incriminating statements made by Barker were rendered harmless by the equally damaging statements made by appellant himself. *Quinones*, supra.

Appellant's contentions regarding the existence of a conspiracy are also without merit. In *Phelps v. State*, 462 S.W.2d 310 (Tex.Cr.App.1970) this Court held that when two or more people take part in the commission of a felony, the evidence of the conspiracy is admissible even though the substantive crime of conspiracy is not charged in the indictment. Moreover, the coconspirator exception to the hearsay rule is similarly not limited to prosecutions for conspiracy; it is a rule of evidence applicable to any offense. See *Rodriguez v. State*, 552 S.W.2d 451, 454 (Tex.Cr.App.1977). Likewise, in *Helms v. State*, 493 S.W.2d 227, 230 (Tex.Cr.App. 1973) in which appellant was attempting to dispose of a weapon used in the commission of the offense, the Court said:

"Each statement or act of a co–conspirator up until the time the object of the conspiracy is completed is admissible."

Finally, the fact that a conspiracy existed between appellant and Barker is clearly inferable from the evidence. Proof that they were acting together in selling the stolen property is, by itself, sufficient to establish a conspiracy. See *Morgan v. State*, 519 S.W.2d 449, 451 (Tex.Cr.App.1975). Appellant's own statements and conduct, the statements of coconspirator Barker, evidence of his possession of stolen property and receipt of money will raise a presump-

tion of guilt that the jury was entitled to rely on. See *Rice v. State*, 587 S.W.2d 689 (Tex.Cr.App.1979); *Welch v. State*, 543 S.W.2d 378, 381 (Tex.Cr.App.1976); *Morris v. State*, 402 S.W.2d 161 (Tex.Cr.App.1966); *Mims v. State*, 140 Tex.Cr.R. 647, 146 S.W.2d 754 (1940); and *Parrish v. State*, 138 Tex.Cr.R. 150, 134 S.W.2d 271 (1939). Accordingly, appellant's fourth ground of error is also overruled.

In appellant's fifth and final ground of error he advances the novel proposition that since the Shadetree Landscaping Company was not registered under the Assumed Name Statute, contained in Section 36.10 Tex.Bus. and Comm.Code, any evidence thereby obtained should have been suppressed as illegally obtained evidence, pursuant to Article 38.23, V.A.C.C.P. He thus claims that the trial court erred in refusing to submit an instruction so charging the jury. The State correctly notes that appellant's requested charge does not reflect the law at the time of trial, since appellant sought to use the old Article 5924, V.A.T.S., which has since been revised and replaced by Article 36.10 Tex.Bus. and Comm.Code. Be that as it may, we cite appellant to *Drago v. State*, 553 S.W.2d 375 (Tex.Cr.App.1977) to demonstrate that the primary purpose of the Exclusionary Rule has nothing to do with the Assumed Name Statute. Neither does the Assumed Name Statute have any bearing on an undercover police operation. The Assumed Name Statute's purpose goes to commercial reliability. In *McCarley v. Welch*, 170 S.W.2d 330, 332 (Tex.Civ.App., 1943, no writ) the Court said:

"The Act [Article 5924, V.A.T.S.] was intended to give stability to credit by requiring those operating under assumed names to disclose their identity."

It can hardly be argued, moreover, that under the definitions contained within the statute, the Shadetree Landscaping Company could be considered as "regularly conducting business." Finally we would remind appellant that the defense of entrapment is limited by V.T.C.A. Penal Code, § 8.06 and must be specifically raised as an issue of fact by the evidence. See *Drago*,

supra, at 378. Appellant's last ground of error is overruled.

 Having found no reversible error,[7] we affirm the judgment of the trial court.

7. We have reviewed appellant's five grounds of error raised in his pro se brief and find them to be without merit. His first ground alleges that the indictment is fatally defective because the word "did" is omitted after "attempt and ____ commit theft." All three indictments state that appellant "did there and then intentionally and knowingly, without the effective consent of the owner thereof, enter a habitation and did attempt to commit and commit theft." We find no authority, neither does appellant cite us to any case law, that holds such an indictment fundamentally defective. In his other four grounds appellant raises the issue of his punishment as assessed by the jury under V.T.C.A. Penal Code, § 12.42. The three offenses were consolidated by defendant's motion into a single trial. In Cause No. 12,310, burglary of the Pierce residence, the State included a burglary and enhanced punishment occurring on December 22, 1975, and a felony theft conviction of October 9, 1973, in the charge to the jury. All three indictments contained these enhancement provisions, but the other two provisions were waived by the State in Cause No. 12,311, and Cause No. 12,312, and were not included in the trial court's punishment charge to the jury. The jury found the evidence to be true in Cause No. 12,310 and the trial judge sentenced appellant to life. In the other two burglary offenses, the jury assessed punishment at 25 years each. Under the authority of *Ex parte Friday*, 545 S.W.2d 182 (Tex.Cr.App.1977), *Carvajal v. State*, 529 S.W.2d 517 (Tex.Cr.App.1975) and extending back to *Ex parte Calloway*, 151 Tex. Cr.R. 90, 205 S.W.2d 583 (1947), so long as a prior conviction has not previously been used for enhancement as a second offense, it is available. However, under § 12.42(d) a prior conviction that has already been used for enhancement may be used to fix habitual status. See *Ex parte White*, 538 S.W.2d 417 (Tex.Cr. App.1976).