**Frances Louise Finster TURNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–84–104–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 28, 1986.

Lewis Dickson, Houston, for appellant.

William Meitzen, Dist. Atty., Frank Follis, Asst. Dist. Atty., Richmond, for appellee.

Before PAUL PRESSLER, MURPHY and DRAUGHN, JJ.

## SUBSTITUTE OPINION ON MOTION FOR REHEARING

MURPHY, Justice.

Appellant was charged by indictment with the capital murder of her husband, Robert Turner. Appellant pleaded not guilty, but was found guilty of the offense of capital murder by the jury after a lengthy trial. The jury failed to answer all the special issues on punishment affirmatively, therefore the trial court assessed punishment at life imprisonment in the Texas Department of Corrections.

Although appellant raises fourteen grounds of error, our disposition of the case requires only that we address two issues. Accordingly, we find it necessary to respond only to the following contentions: (1) whether the trial court committed reversible error by allowing the State to introduce into evidence before the jury a certified copy of the trial court's written contempt order holding appellant in contempt for refusing to give five handwriting exemplars; and (2) whether the trial court erred in overruling appellant's motion to set aside the indictment and discharge for failure to provide a speedy trial. On May 1, 1986, we issued an opinion in which we ordered that appellant's conviction be reversed and remanded. We subsequently withdrew this opinion in order to consider the State's motion for rehearing. This opinion is substituted for the previous opinion, and is dispositive of both appellant's grounds of error on original submission and the State's grounds of error in its motion for rehearing. We again reverse and remand.

As the sufficiency of the evidence is not challenged, a detailed recitation of the facts surrounding the murder of appellant's husband is not necessary. It suffices to state that on March 18, 1982, Robert Turner was murdered at a roadside park on U.S. Highway 59 in Fort Bend County. Michael Hunter, the admitted killer, testified to the facts surrounding the murder in exchange for a sentence of thirty years confinement in the Texas Department of Corrections. He testified that he and appellant had several discussions about killing the deceased, and in fact had unsuccessfully attempted to do so on two prior occasions. He testified that both appellant and her daughter, Sherri Frank, helped plan the murder and that on the day the killing took place appellant allegedly lured the deceased to a restroom at the roadside park. It was there that Hunter launched his attack which resulted in Turner's death. Appellant never denied that she was present and witnessed the murder: she denied, however, any knowledge or participation in the killing.

### I.

Appellant's first four grounds of error challenge the admissibility of a written contempt order issued by the same court that presided over her murder trial. Appellant's fifth and sixth grounds challenge the admissibility of facts surrounding her unsuccessful contest of a Colorado court order for handwriting exemplars. The Colorado order was issued in connection with an unrelated alleged forgery investigation. For the reasons stated below, we are of the opinion that the introduction into evidence of the written contempt order constituted the admission of an extraneous offense, and that it was not admissible under any exception to the rule prohibiting the introduction of such offenses.

In order to adequately present the error which occurred by reason of the admission into. evidence of the contempt order, we find it necessary to discuss the testimony which was developed at trial as to both the Colorado and Texas exemplar requests and

the ultimate admission of the contempt order at issue. The Prosecution was permitted to put into evidence an abundance of evidence regarding handwriting exemplar requests *both* in Colorado and Texas. As to the Colorado proceedings, the Prosecutor offered testimony that on June 14, 1982, appellant was in Colorado and was served with an order to give some handwriting exemplars in connection with an alleged forgery investigation. The investigation was in regard to one of her husband's life insurance policies. An FBI agent, Michael Igoe, testified that appellant, through her Texas attorney and through a retained Colorado attorney, contested by a motion to quash, the validity of the process. Appellant complied with the order within a little more than an hour's time, and provided the Colorado authorities with Exhibit 98, the requested samples.

Both in and out of the presence of the jury, appellant objected to evidence surrounding the Colorado court order for handwriting exemplars because it was irrelevant and immaterial to her murder trial and constituted the admission of an extraneous offense. Defense counsel argued that its sole effect would be to prejudice the jury. The State argued that the testimony of the facts surrounding appellant's unsuccessful contest of the Colorado court order were relevant to show her motive in killing her husband in that she arranged his murder in order to recover insurance proceeds. The State also argued that even though appellant did comply with the order, her initial contest of the process was relevant to show her "attitude" toward court orders and to show her lack of cooperation. Furthermore, the State alluded to the fact that there would be "an attempt to proffer further evidence about her attitude toward court orders in this court." Appellant's objections were overruled, and the jury was permitted to hear detailed testimony of the facts surrounding the Colorado court order for handwriting exemplars.

Later in appellant's trial, the court excused the jury to hear her motion in limine. During the hearing, the court heard testimony about appellant's alleged refusal to give additional exemplars to authorities in Fort Bend County. The authorities wanted appellant to copy the text of several incriminating letters, Exhibits 79, 80 and 81, in order to compare the handwriting and to confirm appellant's status as the author. The effect of the State's proffer of the contempt order would be to show not only appellant's refusal to provide the exemplars, but also that the same judge who was presiding over her murder trial had ordered her jailed for contempt of court. Exhibit # 117, the contempt order, was offered by the State as tangible evidence of appellant's refusal to comply with the request for exemplars, and of her subsequent jailing for that refusal.

Appellant objected to the proffer of the testimony regarding her refusal and of the contempt order as evidence of that refusal on the basis that such would constitute the admission of an extraneous offense, and that the contempt order and circumstances surrounding the entry of the order were irrelevant and immaterial to the proceedings at hand.

The State contended that the contempt order would show "a pattern of conduct" on appellant's part, as well as her lack of cooperation. The State argued that the contempt order was admissible and could be considered by the jury as an inference of guilt.

The trial court overruled appellant's objections to the admissibility of the contempt order, and State's Exhibit # 117 was admitted into evidence. Further, the trial court permitted the State to read the contents of Exhibit # 117 to the jury. That exhibit provided in pertinent part the following:

> On the 22nd day of December, 1982 the Court having ordered Frances Louise Finster Turner to submit handwriting exemplar as ordered by the Court on December 22, 1982 at 11:30 A.M. at Jury Room 268th District Court, Fort Bend County, Texas and further Defendant Frances Louise Finster Turner refused to obey Court order to submit handwriting exemplar, the Court is of the opinion

that Defendant, Frances Louise Finster Turner is in contempt of Court, therefore;

It is ORDERED, ADJUDGED and DECREED that Defendant Frances Louise Finster Turner be committed to the Fort Bend County Jail to remain in custody day to day until Defendant Frances Louise Finster Turner complies with Court order to submit handwriting exemplar or until further orders of this Court.

SIGNED and ENTERED this the 22nd day of December, 1982.

It is in this context that appellant contends that the admission into evidence of the written contempt order violates the rule prohibiting the introduction of offenses extraneous to the crime charged. The responsive argument of the State is that the testimony regarding the requests for handwriting exemplars and the contempt order were necessary and relevant to show that a conspiracy existed to kill Robert Turner. Appellant's refusal to give the second requested handwriting samples and the resulting contempt order are relevant, according to the State, as proof that the "conspiracy" to kill Robert Turner continued long after the actual murder took place.

The State contends that appellant's failure to comply with the court's order for handwriting exemplars which resulted in her being held in contempt of court constitutes a civil and not a criminal offense. The State argues that because appellant's being held in contempt of court was not a criminal offense, the extraneous offense rule is inapplicable. We disagree.

■ First we note that "[c]ontempt proceedings are generally criminal in nature whether they grow out of criminal or civil actions. It follows that the proceedings should conform as nearly as practicable to those in criminal cases." *Ex Parte Payne*, 598 S.W.2d 312, 316 (Tex.Civ.App.—Texarkana 1980, no writ) (disapproved on other grounds in *Huff v. Huff*, 648 S.W.2d 286 (Tex.1983)). Second we note that the extraneous offense rule has not been limited to

adjudicated criminal offenses, but instead has been found applicable to extraneous criminal "matters." *See, e.g., Alvarez v. State*, 511 S.W.2d 493, 496 (Tex.Crim.App. 1973) (Opinion on State's Motion for Rehearing) (holding that murder defendant's confession that he had recently shot and killed another man, although not a criminal offense, was still inadmissible as proof of an "extraneous matter"). Thus we are of the opinion that the rule prohibiting the introduction of extraneous offenses is not as narrow as the State would argue.

We have found no Texas cases wherein a contempt order was introduced into evidence and its contents read to the jury. It follows, therefore, that we found no Texas cases wherein a contempt order admitted under circumstances similar to the instant case was found to be the admission of an extraneous offense. We remain of the opinion, however, that because a contempt proceeding is quasi-criminal in nature, and in view of the fact that appellant was ordered jailed "day to day" until she complied with the court's order, the admission into evidence of the contempt order and the reading of its contents to the jury constituted the admission of an extraneous offense. Accordingly, we find no merit in the State's contentions on this issue.

■ It has long been the rule that an accused is entitled to be prosecuted on the accusations contained in the State's pleadings, and that he/she should not be tried for some collateral crime or for being a criminal generally. *Bush v. State*, 628 S.W.2d 441, 443 (Tex.Crim.App.1982). Accordingly, proof of extraneous transactions or offenses committed by a party are generally inadmissible. In *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972), the Court of Criminal Appeals discussed some exceptions to the general rule and listed them as including: (1) to show the "res gestae" of an offense; (2) to prove identity; (3) to prove scienter, malice, or state of mind when such is an essential element of the crime charged and not inferrable from the act itself; (4) to prove motive; and (5) to refute a defensive theory raised by the

accused. Although not an exhaustive list, the above cited exceptions are considered as good "examples" of admissible offenses. *See, e.g., Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App.1983). Pervading this rule, however, is the general caveat that even if the evidence fits within one of the above cited exceptions, it must still be shown to be *"material and relevant to a contested issue and its relevance must not be outweighed by its prejudicial effect." Phillips v. State,* 659 S.W.2d 415, 418 (Tex.Crim.App.1983) (emphasis added); *Gipson v. State,* 619 S.W.2d 169 (Tex.Crim. App.1981). The above-stated test has been called the "true 'test' of extraneous offense admissibility." *Williams v. State,* 662 S.W.2d at 346.

In *Murphy v. State,* 587 S.W.2d 718 (Tex.Crim.App.1979), the defendant appealed his conviction for aggravated robbery and complained that the trial court committed reversible error when it allowed an extraneous offense to be admitted into evidence for the purpose of showing motive, and to attack the credibility of two witnesses, one of whom was the defendant. The Court of Criminal Appeals reversed the defendant's conviction, holding that the admission of the extraneous offense constituted error as the general credibility of a witness "is not a material issue in the sense that it will justify the admission of inherently prejudicial evidence of details of an extraneous offense committed by the witness." *Murphy v. State,* 587 S.W.2d at 722.

In this connection, we quote with approval the language in *Murphy v. State,* wherein the Court of Criminal Appeals articulated the dangers of admitting extraneous offenses in a criminal proceeding, and of the consequent necessity for safeguards. The Court stated in pertinent part the following:

> In a criminal proceeding, when the extraneous or similar transaction committed by the accused, sought to be admitted by the State, constitutes a criminal offense, introduction of that 'extraneous offense' transaction is inherently prejudicial be-

cause: (1) the accused is entitled to be tried on the accusation in the State's charging instrument which specifies the 'material issues' of the case and cannot—consistent with the rudiments of due process—be tried for some collateral crime of which he has no notice; and, (2) an accused's 'propensity to commit crimes' is not an issue which is material to whether he is guilty of the specified conduct charged by the State; it follows therefore, that introduction of evidence establishing such a propensity constitutes a trial of the accused as a 'criminal generally' which offends our system of justice.

*Murphy v. State,* 587 S.W.2d at 721 (citations omitted). As discussed above and as further articulated in *Murphy,* an extraneous transaction or offense may become admissible if: (a) it is shown by the prosecution both that the transaction or offense is relevant to a material issue in the case; and (b) it is shown that the relevancy of the evidence outweighs its inflammatory or prejudicial potential. *See, e.g., Murphy v. State,* 587 S.W.2d at 722. Furthermore, "a relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged must be shown." *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App. 1972).

Our threshold inquiry, therefore, is whether the contempt order was admissible to show appellant's pattern of conduct in furtherance of the State's asserted theory that she was involved in a conspiracy which continued long after the murder. We must decide whether the contempt order, as evidence of the continuing conspiracy, was relevant to a material issue in appellant's trial for murder. In this connection we note that this analysis requires that we decide if the proffered evidence related to the burden of proof imposed on the State, and if it was the type of evidence which the State had to offer to prove the essential elements of its case. *Albrecht v. State,* 486 S.W.2d 97, 101 (Tex.Crim.App.1972). This is critical because if the evidence is "immaterial to the essential elements on

which the State has the burden of proof, the prejudicial effect of evidence of an extraneous offense *would far outweigh* its probative value." *Murphy v. State*, 587 S.W.2d 718, 722 (Tex.Crim.App.1979) (emphasis added).

The parties agree that there are no Texas cases wherein the procedure of admitting testimony regarding a defendant's refusal to comply with a court order *and* admitting evidence of that refusal by way of a written contempt order, was approved. The State cites the case of *United States v. Nix*, 465 F.2d 90 (5th Cir.1972), *cert. denied*, 409 U.S. 1013, 93 S.Ct. 455, 34 L.Ed.2d 307 (1972), where the court held that the Prosecutor could comment on the defendant's refusal to provide a handwriting exemplar. We do not find the *Nix* case controlling of this appeal and the facts involved herein and emphasize that in *Nix* the written contempt order was not admitted into evidence.

█ We are of the opinion that under the particular circumstances involved in this case, and in view of the foregoing authorities, there was no legal justification for the admission of the written contempt order into evidence, and the trial court committed reversible error in so doing.

First, appellant was charged with the capital murder of her husband—not with conspiracy. As the indictment makes no mention of the offense of conspiracy, evidence by way of the contempt order of an alleged conspiracy could not possibly be relevant to any issue in appellant's trial for capital murder. *Cain v. State*, 642 S.W.2d 806, 808 (Tex.Crim.App.1982). There is no showing in the instant case of a relationship between the evidence of the extraneous offense (the contempt order), and the evidence necessary to prove that the accused committed the crime of capital murder for which she stood charged as is required under *Albrecht v. State, supra.*

Second, we are of the opinion that the State's arguments at trial supporting the proffer of the contempt order, and its responsive argument to this court, do not support a conclusion that the admission of the contempt order fits within any of the general exceptions to the prohibition of extraneous offenses.

█ As stated above, the State argued at trial that the contempt order was admissible to show appellant's "pattern of conduct," and in their appellate brief they repeatedly assert the order's relevance as showing the "conspiracy" to kill Robert Turner and to cover-up his murder. It thus appears that the State is arguing that the contempt order is admissible as evidence of appellant's "motive" in refusing to comply with the exemplar requests, because the refusal was part of the continuing "conspiracy" to cover-up her involvement in the murder. The proffer of the contempt order on this basis does not, however, demonstrate that an exception to the general rule prohibiting the admission of extraneous offenses has been met. The rule is clear that evidence showing motive must be offered to show a motive to commit the offense for which the defendant was *charged*—not to show a motive to commit an additional extraneous offense. *Bush v. State*, 628 S.W.2d 441, 444 (Tex.Crim.App.1982). Appellant was *charged* with capital murder, not with conspiracy. Thus, offering the contempt order as proof of appellant's motive in refusing to provide exemplars and as proof of her involvement in an ongoing conspiracy to cover-up the murder, is clearly irrelevant to the offense charged. *Bush v. State*, 628 S.W.2d at 444. "Extraneous offenses are not admissible to demonstrate motive for the commission of an offense *other than* the offense for which the defendant is presently charged." *Bush v. State*, 628 S.W.2d at 444.

The State argues that because appellant's trial was for murder for hire or remuneration, the incriminating letters,

which appellant refused to copy and which resulted in her being held in contempt of court, were a direct link in proving the remuneration theory and direct evidence of her cover-up of the murder for hire. Although the State cites many cases to support this contention, the one most applicable and potentially persuasive is *Roy v. State*, 608 S.W.2d 645 (Tex.Crim.App.1980).

In *Roy*, the defendant appealed three convictions for burglary of a habitation. The key evidence in the case constituted videotapes of appellant and two other individuals selling stolen property to undercover police agents. *Roy, supra,* at 647. The appellant in *Roy* complained that he was denied his right of confrontation because one of the individuals in the videotape, although subpoenaed by appellant, chose to exercise his right not to testify. He also complained that although the declarations of co-conspirators are admissible, no conspiracy was shown to exist, and if one did exist, it terminated *prior* to the videotaping of the sale of the goods. *Roy, supra,* at 650. Appellant did not lodge a hearsay objection, nor did he complain of any extraneous offenses contained in the tapes. *Id.* In addressing appellant's complaint regarding the existence of a conspiracy, the Court cited its prior holding "that when two or more people take part in the commission of a felony, the evidence of a conspiracy is admissible even though the substantive crime of conspiracy is not charged in the indictment." *Roy v. State*, 608 S.W.2d at 651, *citing, Phelps v. State*, 462 S.W.2d 310 (Tex.Crim.App.1970). Thus the State in the instant case argues that although appellant was not charged with conspiracy, the evidence of such is admissible as an "evidentiary tool" applicable to any offense, and not limited to prosecutions for conspiracy. *See, e.g., Roy v. State*, 608 S.W.2d at 651.

We agree that under the proper factual circumstances the admission of an extraneous offense, as proof of a conspiracy in a case wherein the defendant was not prosecuted for conspiracy, might be permissible in view of the holding in *Roy v. State*. We are of the opinion, however, that even if the State was attempting to demonstrate

an ongoing conspiracy as an "evidentiary tool" in appellant's trial for murder for remuneration, we remain convinced that *under the facts of this case* and in view of the record as a whole, the contempt order as proof of the conspiracy was not properly admissible. A careful reading of our opinion discloses that we have emphasized that *even if* evidence fits within one of the exceptions to the rule prohibiting the introduction of extraneous offenses, it must still be shown to be *"material and relevant to a contested issue and its relevance must not be outweighed by its prejudicial effect."* *Phillips v. State*, 659 S.W.2d 415, 418 (Tex.Crim.App.1983) (emphasis added); *Gipson v. State*, 619 S.W.2d 169 (Tex.Crim.App.1981). Furthermore, as noted above, the above-stated test has been called the "true 'test' of extraneous offense admissibility." *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983).

It is well-established that our inquiry into the admissibility of evidence requires that we compare probative value to potential prejudice. Further, when reviewing the admissibility of an extraneous offense, we must examine the "evidence which the State has to offer in proof of the essential elements of its case." *Albrecht v. State*, 486 S.W.2d at 101. This is critical to establish the necessary relationship between the extraneous offense and the crime for which appellant stands charged. We find no such relationship between appellant's being found in contempt of court for refusing to provide exemplars, and the elements necessary to prove capital murder or her motive for committing that offense.

The degree of harm caused by the error complained of in grounds of error one through four is further compounded by the admission of additional evidence discussed above regarding the Colorado court proceedings for handwriting exemplars. This evidence was allowed before the jury to demonstrate her attitude toward court orders and her lack of cooperation. The admission was allowed despite the fact that the exemplars were requested in connection with an unrelated alleged forgery in-

vestigation. Furthermore, the relevancy of this evidence is questionable in view of the fact that a State's witness admitted appellant herself never refused to provide the samples, but rather it was her attorney who handled the brief challenge to the validity of the process. In any event the record shows that appellant complied with the request in slightly over an hour of being served, thus her attitude toward court orders and lack of cooperation does not appear to be in issue, and if it was, it was not demonstrated by the evidence relating to the Colorado proceedings. Instead, the cumulative effect of the evidence regarding exemplar requests appears to have had no purpose or effect *other than* to portray appellant as a criminal generally—one who was involved in a conspiracy to cover-up a murder and who furthered that conspiracy by refusing to cooperate with authorities.

■ Finally, we do not find merit in the State's argument that the introduction into evidence of the contempt order was harmless error because the State already had two witnesses who testified that appellant was the author of the three incriminating letters. It was these letters that appellant refused to copy and for which she was jailed for contempt. The State contends that since the jury already had before it evidence that appellant was responsible for the letters in question, admitting evidence of the contempt order was harmless. The harmful error occurred, however, not by creating an inference that a comparison of the handwriting would be unfavorable, but rather in showing that the same judge that presided over her trial had already jailed her for contempt of court. It was at this point that the State crossed the impermissible line and offered evidence that had no purpose but to prejudice the jury and portray appellant as a criminal generally. As stated in *Bush v. State*, "[t]his is precisely the purpose for creating the general rule against the admissibility of extraneous offenses." *Bush v. State*, 628 S.W.2d at 445. Thus in view of the foregoing, we are of the opinion that *even if* we considered the contempt order as an "evidentiary tool" as

proof of a conspiracy within the purview of *Roy v. State*, such a tool must yield to the "true test" of extraneous offense admissibility—that its relevance must not be outweighed by it prejudicial effect. We find no exception to the rule under which the complained of evidence would be admitted, and accordingly hold that the trial court's action in so doing constituted reversible error.

## II.

We have considered appellant's fourteenth ground of error regarding the Speedy Trial Act because a violation of the Act would be a bar to further prosecution of the instant cause.

Appellant's motion to set aside the indictment under the Speedy Trial Act alleged that the indictment was defective and that the State could not have been ready, despite its announcement, to try the case under a defective indictment. Appellant's motion to set aside the indictment on this basis was overruled. On appeal appellant contends that the State was not ready and therefore made a "sham announcement" because it had not finalized an agreement and offer of immunity with Michael Hunter, the State's key witness. Appellant argues that the agreement and offer of immunity was the "quid pro quo" for Hunter's testimony, and that this agreement was not finalized within the 120–day period in which the State announced ready.

■ We do not find it necessary to address the merits of appellant's fourteenth ground of error for it is clear that the complaint raised in her Speedy Trial Motion and that raised on appeal do not comport. We are therefore bound by the rule that nothing is preserved for review when the objection on appeal does not comport with the objection made at trial. *Gray v. State*, 628 S.W.2d 228, 230 (Tex.App.—Corpus Christi 1982, pet. ref'd). Accordingly, appellant's fourteenth ground of error is overruled.

The judgment is reversed and the cause remanded.