IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-168-CR




LINDA FAYE GEIGER,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 38,658, HONORABLE JACK W. PRESCOTT, JUDGE


 





PER CURIAM

 A jury found appellant guilty of conspiring to deliver
over 400 grams of cocaine, a controlled substance. Tex. Pen. Code
Ann. § 15.02 (1974); 1983 Tex. Gen. Laws, ch. 425, §§ 4, 6 [Tex.
Civ. Stats. art. 4476-15, §§ 4.011, 4.03, now codified as Tex.
Health & Safety Code Ann. §§ 481.108, 481.112 (Pamph. 1991)]. The
district court assessed punishment at imprisonment for thirty
years.

 In addition to appellant, eighteen people were named in
the indictment. Also indicted for conspiracy were Steven
Armstrong, Beverly Bridges, Joseph Cunningham, Yolanda Davis, Alice
Freeman, Ivan Geiger (appellant's brother), Sammy Geiger
(appellant's brother), Will Gillespie, Deborah Harris, Elmo
McCullough, David Reed (appellant's brother-in-law), Gloria Reed
(appellant's sister-in-law), Felicia Smith, and Sheila Terry. 
Named as unindicted coconspirators were Eric Sanders, Esther Lilly,
Andre Shepherd, and Martin Hollins. By point of error challenging
the sufficiency of the evidence, appellant contends the State
failed to prove that she was part of the alleged conspiracy. 
Appellant concedes that she was shown to have delivered cocaine,
but asserts that she was acting as an "independent operator."

 Sheila Terry, who had previously pleaded guilty,
testified for the State. Terry stated that in May 1989 she
accompanied a group of people on a trip to Houston to purchase
cocaine. The group consisted of Sammy Geiger, Joseph Cunningham,
and Gary Reed (another of appellant's inlaws). The trip was made
in appellant's car. According to Terry, Gary Reed purchased
cocaine on behalf of David Reed, and Sammy Geiger purchased cocaine
on behalf of appellant. After returning from Houston, the group
met David Reed, who divided the cocaine into two equal amounts, one
for himself and one for appellant.

 Terry made a second trip to Houston in July 1989, this
time accompanied by appellant, Sammy Geiger, David Reed, and one
other man. On this trip, appellant and Reed purchased cocaine. 
Appellant took her cocaine to apartment 7 at the Courtyard
Apartments in Temple where she converted it from powder into crack,
then bagged it for sale. Terry testified that Ivan and Sammy
Geiger were present in the apartment in addition to appellant and
herself. Also present was the resident of the apartment, Jennifer
Thomas.

 Terry testified that appellant was in the business of
selling crack cocaine. Terry said that she sold cocaine for
appellant, as did Felicia Smith, Van Geiger, and others. Terry
also saw appellant sell cocaine. According to Terry, both David
Reed and Joseph Cunningham supplied cocaine to appellant.

 On June 3, 1989, Temple police officers searched
apartment 3 at the Courtyard Apartments. Crack cocaine was found
in the possession of the resident of the apartment, Frederick
Johnson. Appellant was not present, but she and David Reed had
been seen going to and from the apartment the previous day.

 On June 5, 1989, a car belonging to Jerry Reed,
appellant's common law husband, was stopped on 5th Street near the
Courtyard Apartments. Among the people in the car were appellant,
Jerry Reed, and Gloria Reed. A narcotics detection dog alerted on
the glove compartment, inside of which was a purse belonging to
Gloria Reed. The purse contained $4700 in small bills; both
appellant and Reed stated that the money was appellant's.

 Also on June 5, police officers executed a warrant to
search apartment 505 at the Waymon Manor Apartments in Temple, the
residence of Yolanda Davis. Appellant had been seen at this
apartment earlier that day, but was not present at the time of the
search. The officers found in the apartment a razor blade on which
there was a trace amount of cocaine. 

 On June 21, 1989, Temple police searched room 235 of the
Ramada Inn hotel. The room had been rented by Sheila Terry. 
Appellant, David Reed, and Jerry Reed had been seen by police going
to and from the room. The police found David Reed and a juvenile
in the room. No controlled substances were found, but Reed had
$2890 in cash.

 Van Geiger was searched by a Temple police officer on
July 12, 1989. A plastic bag containing crack cocaine was found in
his sock.

 On July 25, 1989, Temple police officers acting on a tip
stopped a car in the parking lot of the Bellcrest Motel. Felicia
Smith ran from the car and into room 240. The officers followed
her inside the room, where they saw appellant "frantically" pulling
money from her brassiere. Sammy Geiger and Sheila Terry were also
present in the room. In addition to $1361 in appellant's
possession, the officers found in the motel room a small plastic
bag of cocaine and a soda can modified for smoking crack. David
Reed arrived at the motel room while the police were there, but his
request to enter was denied.

 On August 23, 1989, police officers executed a warrant to
search appellant's residence at the Waymon Manor Apartments in
Temple. When they entered the apartment, the officers saw
appellant running toward the back of the apartment pulling cash
from her pocket. The officers seized $508 in small bills.

 On August 29, 1989, Temple police officers, acting on an
informer's tip, arrested Eric Sanders. During a search of Sanders
incident to this arrest, the officers found two bags of crack
cocaine. Sanders told the officers that he purchased the cocaine
from Joseph Cunningham. At the direction of the police, Sanders
called Cunningham and arranged to purchase more cocaine. The
delivery was to be made at a convenience store. Alice Freeman,
Cunningham's common law wife, arrived at the convenience store at
the appointed time driving a car belonging to Cunningham. Two
plastic bags containing cocaine were found in the car and Freeman
was arrested.

 Armed with this information, the officers obtained a
warrant to search Joseph Cunningham's apartment. During this
search, the officers seized cocaine, scales of the type used to
measure controlled substances, and over $6000 in cash. They also
seized "dope notes" or drug transaction records containing the
names of Jerry Reed, Elmo McCullough, Eric Sanders, appellant, and
others. Cunningham was the only person in the apartment at the
time of the search.

 A Temple police officer testified that he purchased a
large quantity of cocaine from David Reed in November 1989. A
police informer testified that he purchased cocaine from David Reed
and appellant at the Courtyard Apartments during the spring and
summer of 1989.

 From the evidence summarized above, the jury could find
beyond a reasonable doubt that appellant and one or more of the
other named conspirators had acted together to sell cocaine. This
was sufficient to establish a conspiracy. Roy v. State, 608 S.W.2d
645, 651 (Tex. Cr. App. 1980); Morgan v. State, 519 S.W.2d 449, 451
(Tex. Cr. App. 1975). Appellant does not dispute the sufficiency
of the evidence as to the alleged overt acts. The point of error
is overruled.

 In her second point of error, appellant contends the
court erred in admitting in evidence Department of Public Safety
laboratory reports and ten packages of cocaine. Appellant urges
that the reports, which established that the packages contained
cocaine, were inadmissible hearsay under the holding in Cole v.
State, No. 1179-87, Tex. Cr. App., November 14, 1990 (not yet
reported) (motion for rehearing filed). However, appellant voiced
no objection to the laboratory reports, and her only objection to
the packages of cocaine was that they had not been "specifically
linked on an affirmative basis to [appellant] and that none were
taken from her possession." In the absence of an objection on the
ground appellant now urges, nothing is presented for review. Tex.
R. Cr. Evid. Ann. 103(a) (Pamph. 1990). Contrary to appellant's
contention, we find the "right not recognized" exception to the
contemporaneous objection rule to be inapplicable here. See Ex
parte Chambers, 688 S.W.2d 483, 486 (Tex. Cr. App. 1984) (Campbell,
J., concurring).

 Finally, appellant asserts that the district court erred
by admitting in evidence testimony concerning an oral statement
made by appellant while in custody. The testimony came from Temple
police officer Dan Wills, who had been called by the State to
testify to the arrest of Eric Sanders on August 29, the subsequent
arrest of Alice Freeman, and the search the next day of Joseph
Cunningham's apartment. During cross-examination, defense counsel
sought to emphasize the fact that appellant had not been present at
the times in question. Counsel showed to Wills defense exhibit G-1, and asked him if he "recall[ed] that conversation."


A. Oh, yes, I do.


Q. All right. Thank you. So between the 23rd and the
29th you had a conversation with Mrs. Geiger; is that
correct?


A. Yes, I did.


Q. All right. On the 29th I assume you knew where her
location was?


A. Yes, I did.


Q. On the 30th you knew where her location was?


A. I assumed. I didn't really pay much attention to
where she was on the 30th.


Q. Okay. But certainly on the 29th?


A. Yes, I knew where she was on the 29th.


Q. And you knew she wasn't with Eric Sanders or Alice
Freeman?


A. That's correct.



On redirect, Wills testified that the conversation referred to by
defense counsel took place in the Bell County Jail.

 At this point, a hearing was held outside the jury's
presence. At this hearing, exhibit G-1 was shown to be a report
prepared by Wills following his jail conversation with appellant. 
The prosecutor informed the court that he intended to question the
officer about the contents of this conversation, reasoning that
defense counsel had opened the door and citing the rule of optional
completeness. See Tex. R. Cr. Evid. Ann. 107 (Pamph. 1990). 
Appellant voiced three objections: that asking the officer if he
remembered the conversation did not open the door to testimony
about what was said; that such testimony would violate appellant's
Fifth Amendment right to counsel; and that the report was, in
effect, a written statement of the accused that was inadmissible
under Tex. Code Cr. P. Ann. art. 38.22, § 2 (1979).

 Appellant's objections were overruled, the jury was
returned to the courtroom, and the prosecutor resumed his
questioning.


Q. Okay. Did you prepare -- based on that conversation
did you prepare what's called an intelligence report?


A. Yes, I did.


Q. That was what was shown to you by [defense counsel]
at least one page of it; is that correct?


A. Yes, it is.


Q. It was in fact two pages; is that correct?


A. That's correct.


Q. You -- in fact how long approximately did you talk to
Mrs. Geiger in the Bell County Jail?


A. The best I could recall at least 30 minutes.


. . .


Q. Did you ask her questions?


A. Yes, I did.


Q. Did she answer your questions?


A. Yes, she did.


Q. What was your purpose when you went to talk to her?


A. I was trying to gather more intelligence about two
individuals, Eric Sanders and Joseph Cunningham.


Q. And did you determine whether or not she knew
anything about those individuals?


A. Yes, that's correct.


Q. Was she cooperative during the interview?


A. Yes, she was.


Q. Was she frank with you during the interview?


A. Yes, she was.


Q. Did you achieve your objective?


A. Yes.


Q. Of talking to her?


A. Yes, I did.


Q. Did you gather information that you had hoped to get
from her?


A. Yes, I did.


Q. Was it a successful interview?


A. Yes, it was.


Q. Did you learn a lot more about this group and drug
trafficking in Temple, Bell County, Texas that you had
been investigating from her?


A. Yes, I did. Some of it was information that I had
already gotten, other of it was new information.


Q. Did you learn more about her involvement?


A. Yes, I did.


Q. And the sources that she utilized?


A. Yes, I did.

With this, the prosecutor passed the witness.

 In his brief to this Court, appellant urges that through
the questioning quoted above, the State was permitted to introduce
her oral statement in violation of Tex. Code Cr. P. Ann. art.
38.22, § 3 (Supp. 1991). This contention does not comport with the
objections voiced by appellant in the trial court. Moreover, the
prosecutor's questions concerned, for the most part, the officer's
purpose in questioning appellant and not the content of their
conversation. To the extent that the prosecutor's questioning of
the officer implied that appellant admitted to him an involvement
in drug trafficking, we find that the error (if any) was harmless
beyond a reasonable doubt. Tex. R. App. P. Ann. 81(b) (Pamph.
1990).

 The judgment of conviction is affirmed.



[Before Justices Powers, Aboussie and Kidd]

Affirmed

Filed: July __, 1991

[Do Not Publish]