**Mario Gomez LOPEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–90–00373–CR.**

Court of Appeals of Texas,
El Paso.

Oct. 2, 1991.

David C. Guaderrama, El Paso County Public Defender, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a conviction for the offense of illegal investment. Trial was to the court and the court assessed punishment at seventeen years' imprisonment. We affirm.

■ In Points of Error Nos. One and Two, the Appellant asserts that the court erred in overruling his motion to suppress the evidence and in subsequently admitting the evidence in that it was obtained in violation of Tex.Health & Safety Code Ann. § 481.159 (Vernon Pamphlet 1991). This statute governs the disposition of controlled substances that are forfeited and utilized by law enforcement agencies for investigative purposes. It reads, in pertinent part:

(c) In order to ensure that controlled substances or raw materials are not diluted, substituted, or tampered with while being used in the investigation of offenses under this chapter, law enforcement agencies using substances or materials for this purpose shall:

(1) employ a qualified individual to conduct qualitative and quantitative analyses of the substances or materials before and after their use in an investigation;

(2) maintain the substances or materials in a secure storage area accessible only to the law enforcement agency head and the individual responsible for analyzing, preserving, and maintaining security over the substances or materials; and

(3) maintain a log documenting:

(A) the date of issue, date of return, type, amount, and concentration of substances or materials used in an investigation; and

(B) the signature and the printed or typed name of the peace officer to whom the material or substance was issued and the signature and the printed or typed name of the individual issuing the substance or material.

(d) A law enforcement agency may adopt a written policy with more stringent requirements than those required by Subsection (c). The Department of Public Safety may enter and inspect, in accordance with Section 481.181, a location at which an agency maintains records, controlled substances, or raw materials as required by this section.

This case centers around a "reverse sting" operation. Undercover narcotics officers of the El Paso Police Department utilized approximately 144 pounds of marihuana which had previously been forfeited in another case. This marihuana was taken from the police evidence room. The Appellant contends that the police officers failed to comply with subsection (c) of the above-quoted statute and; therefore, any evidence derived through the use of the marihuana should have been suppressed in that it was obtained in violation of Tex. Code Crim.Pro.Ann. art. 38.23 (Vernon Supp.1991). This statute provides, in main part:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The Appellant asserts that when the marihuana was released, the six bundles involved were never opened and examined to determine if they contained marihuana pursuant to the statutory definition. There is the further contention that the officer who checked out the bundles did not sign the log. The Appellant's primary concern is that the marihuana was inadequately tested for quality, quantity and concentration when it was returned to the police laboratory in that the police chemist only took a core sampling of two of the six bundles to determine if they contained marihuana.

Two police department chemists testified at the hearing on the motion to suppress the evidence. Debra Chavez and Socorro Castaneda testified with regard to the procedures that were utilized. Chavez testified that she checked out the marihuana to Luis Marquez on March 21, 1990. It was returned on the same date. Chavez utilized the original test results when the marihuana was seized to serve as the testing procedure before the contraband was released to the officer pursuant to the statutory definition of marihuana contained in Tex.Health & Safety Code Ann. § 481.002(26) (Vernon Pamphlet 1991). Castaneda testified that their procedures utilized two documents to comprise the log requirements of § 481.159, subsection (c)(3). The first is a property receipt and the second was a log maintained at the lab. The evidence indicates that the two documents, taken together, comply with the signing in and signing out requirements of that section. Chavez stated that she tested the marihuana when it was returned. She took a core sampling of two of the six bundles and found them to contain marihuana. She stated that this was an accepted practice when analyzing marihuana and that marihuana is not usually tested for concentration. The testing was done on fifty-eight pounds of the entire amount of which consisted of almost 144 pounds of marihuana. She stated that she could find no indication the bundles of marihuana had been tampered with and when the marihuana was returned, the packaging appeared to be the same as when she had checked it out. The weights appeared to be the same except for a slight increase due to the fact that the police officers had taped over various laboratory markings. This taping was done in Chavez's presence.

The evidence at trial must sufficiently identify and trace the chain of custody of the pertinent exhibit. *Mitchell v. State,* 488 S.W.2d 786 (Tex.Crim.App.1973). Absent a showing that the exhibit has been tampered with or changed, the Appellant's objection goes to the weight of the testimony rather than the admissibility of the evidence. *Id.* at 787. We find that the procedures utilized were sufficient with regard to the chain of custody and the analysis of the marihuana.

Further, we fail to see what harm accrued to the Appellant. The evidence revealed that the undercover officers never actually utilized the contraband. The arrests took place without the marihuana ever being shown to the Appellant and the others present at the buy location. The contraband was not introduced into evidence. The Appellant asserts the undercover operation could never have been successful without the presence of the marihuana in the event the suspects insisted on inspecting the product they were going to purchase. However, we do not find this to be invariably the case.

We note another difficulty with the Appellant's contentions. In reference to Article 38.23, the Appellant maintains that *any* violation of the laws of the State of Texas should result in the exclusion of the evidence so obtained. In *Roy v. State,* 608 S.W.2d 645 (Tex.Crim.App.1980), the police were conducting an undercover fencing operation. They used a landscaping company as a front for this operation. The defendant maintained that as the company was not registered in accordance with the provisions of the assumed name statute of the Texas Business and Commerce Code, the evidence should have been excluded pursuant to Tex.Code Crim.Pro.Ann. art. 38.23 (Vernon Supp.1991). The Court of Criminal Appeals held that the alleged violation had nothing to do with the exclusionary rule and the undercover police operation

and the evidence was not excluded. In *Stockton v. State*, 756 S.W.2d 873 (Tex. App.—Austin 1988, no pet.), an undercover narcotics officer enrolled in a high school in order to conduct an investigation into drug sales at the school. The defendant contended on appeal that as the officer had enrolled in the school in violation of certain provisions of the Texas Education Code, the evidence should be excluded. Citing the Roy case, the Austin Court of Appeals held that the school statutes were totally unrelated to the purposes of the exclusionary rule and had no bearing on the undercover operation. The stated purpose of the provisions contained in Tex.Health & Safety Code Ann. § 481.159(c) are "to ensure that controlled substances or raw materials are not diluted, substituted, or tampered with while being used in the investigation of offenses under this chapter...." Thus, § 481.159 is clearly related to the security of controlled substances which have been retained by the law enforcement agency for official purposes and particularly to prevent dilution, substitution or tampering with the substances while they are being used in the investigation of offenses. On the other hand, Article 38.23 relates to *illegally obtained* evidence, such as that obtained as a result of an improper search or a coerced confession, not to evidence that although legally obtained, was perhaps improperly handled under § 481.159. From Appellant's standpoint, there is no showing that the marihuana was illegally obtained. Moreover, the marihuana used in this investigation did not play a direct part in the apprehension of the Appellant and the other parties. Points of Error Nos. One and Two are overruled.

In Point of Error No. Three, the Appellant contends there is insufficient evidence to support the conviction. The case was tried to the bench on a plea of not guilty. The State presented no live testimony but, rather, introduced three police reports and a laboratory report into evidence. The police reports were the statements of police detectives Sanchez, Shelton and Figueroa. This evidence indicates that on March 21, 1990, Detectives Sanchez and Shelton met with the Appellant in a motel room to view the money of prospective buyers of the marihuana which the detectives were going to furnish. Sanchez had been negotiating with the Appellant with regard to a marihuana buy for over a month. The Appellant had provided some buyers but Sanchez had refused the terms of these transactions. On March 21, Sanchez and Shelton went to the motel to meet with the Appellant to view the money that was to be used in the transaction. At the motel, the Appellant introduced Sanchez and Shelton to several other individuals in the room. Negotiations then commenced with regard to the amount of marihuana they wanted and the method of delivery. It is unclear which of the parties entered into this negotiation. One of the suspects then took Sanchez to a pickup truck in the parking lot and showed him the money. Sanchez announced that he was satisfied with the money and he advised them that it would take about two hours to load his truck with the marihuana and return. It was then agreed that Sanchez would drive the vehicle with the marihuana to the parking lot of a nearby K-Mart store. From there he was to call the Appellant and the subjects were to have the money in the same truck. At that time, the understanding was that once Sanchez saw the money again, he would give the keys of his vehicle to the other subjects, and Sanchez and the Appellant would drive the vehicle with the money back to the motel room and count it while the others weighed the marihuana.

When Sanchez and Shelton arrived at the K-Mart parking lot, they met with the Appellant and the other subjects who had earlier been in the motel. Two of the subjects went to their pickup and returned with the money. The money was handed to Sanchez. He in turn gave it to Shelton who gave a prearranged signal to effectuate the arrest.

The standard of review with regard to the sufficiency of the evidence is whether viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983).

Tex.Penal Code Ann. § 7.02 (Vernon 1974) provides in pertinent part:

(a) A person is criminally responsible for an offense committed by the conduct of another if:

.　　.　　.　　.　　.

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or....

The Appellant was charged with illegal investment. Tex.Health & Safety Code Ann. § 481.126(a)(2) states in part:

(a) A person commits an offense if the person knowingly or intentionally:

.　　.　　.　　.　　.

(2) finances or invests funds the person knows or believes are intended to further the commission of an offense listed in Subdivision (1).

That applicable subdivision is contained in Section 481.121(c):

(c) A person commits an aggravated offense if the person commits an offense under Subsection (a) and the amount of marihuana possessed is more than 50 pounds.

Subsection (a) provides:

(a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a usable quantity of marihuana.

Therefore, the State must demonstrate that the Appellant: (1) knowingly or intentionally financed or invested funds; (2) he knew or believed were intended to further the commission of; (3) the possession of more than fifty pounds of marihuana.

 It is not necessary that the controlled substance is actually received as long as the defendant believes that the funds will further the commission of the projected offense. *Beck v. State*, 741 S.W.2d 516 (Tex.App.—Corpus Christi 1987, pet. ref'd). Further, even if another individual supplies the money for the transaction, a defendant can be equally respon-

sible for the commission of the offense under the law of parties. *Rezapour v. State*, 788 S.W.2d 642 (Tex.App.—Texarkana 1990, no pet.).

In the present case, the Appellant had engaged in a series of negotiations which resulted in the present transaction. He introduced the undercover officers to the other individuals and was clearly present during all the negotiations. The Appellant asserts that there is nothing to indicate that he was aware of the arrangements that involved him with regard to the meeting at the K–Mart parking lot and the subsequent counting of the money. Sanchez stated that he made these arrangements with "them". While it is not stated that the Appellant specifically heard these latter arrangements, we find there is sufficient evidence to implicate the Appellant as a party to the offense absent his awareness of those arrangements. Point of Error No. Three is overruled.

The judgment of the trial court is affirmed.