**Roger Earl FISHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–91–00685–CR, 05–91–00732–CR.**

Court of Appeals of Texas, Dallas.

July 21, 1992.

Rehearing Denied Sept. 9, 1992.

Bruce Anton, Dallas, for appellant.

Donald Davis, Dallas, for appellee.

Before LAGARDE, KINKEADE and KAPLAN, JJ.

## OPINION

KINKEADE, Justice.

Roger Earl Fisher appeals his convictions for illegal investment and delivery of a controlled substance. After Fisher changed his plea from not guilty to nolo contendere, the trial court assessed punishment at ten years' confinement in the state penitentiary and a fine of $50,000 for the illegal investment offense. After a bench trial where Fisher pleaded not guilty, the trial court assessed punishment at ten years' confinement in the state penitentiary and a fine of $1000 for the delivery of the controlled substance offense. In five points of error, Fisher argues that (1) his prosecution for delivery of methamphetamine violated the double jeopardy clause of the United States and Texas constitutions, (2) the evidence is insufficient to support his conviction for an illegal investment, and (3) the trial court erred in overruling his motion to suppress evidence. Because Fisher waived his right to complain about double jeopardy, the evidence is sufficient to support his conviction, and the trial court did not err in overruling Fisher's motion to suppress the evidence, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

Roger Earl Fisher told Kevin Chaney, a confidential informant for the Richardson police department, that he wanted to buy a large quantity of marijuana. Chaney put Fisher in contact with Randy Pugh, an undercover Richardson police officer. Officer Pugh and Fisher talked several times on the phone and met twice to discuss the terms of the marijuana purchase. Although Fisher told the officer that he wanted to buy one hundred pounds of marijuana, the officer stated that he could supply only seventy pounds of marijuana to Fisher for $42,000. Fisher agreed to the officer's terms. Officer Pugh then gave Fisher approximately one quarter of an ounce of marijuana to test its quality.

Fisher tried to raise the $42,000 to buy the marijuana, but his efforts failed. Fisher came to the purchase location with only $27,000. Fisher proposed that Officer Pugh take the $27,000, let him have sixty pounds of marijuana to sell, and allow him to hold the title to a 1987 Chevrolet Camaro and a controlled substance, methamphetamine, as collateral for the sixty pounds of marijuana. Fisher proposed that he would sell the sixty pounds and then pay Officer Pugh for the seventy pounds of marijuana. He then could reclaim the remaining ten pounds of marijuana, the car, and the con-

trolled substance. After Officer Pugh agreed to these terms, he gave the signal for the backup officers to arrest Fisher. The police charged. Fisher with illegal investment and delivery of a controlled substance.

Before trial, Fisher filed pretrial motions, including a motion to dismiss the indictment and a motion to suppress the marijuana evidence, both of which the trial court overruled. Fisher also raised a double jeopardy claim before trial. Fisher argued that the delivery of the controlled substance during the marijuana purchase constituted a single criminal episode. He further argued that the State could not try the two offenses together in the same trial because he had not been given thirty days' notice before trial as required under section 3.02(b) of the Texas Penal Code. After Fisher made an oral motion to sever the cases, the trial court agreed with his interpretation of section 3.02(b) of the Texas Penal Code and granted his motion. After Fisher pleaded not guilty to the illegal investment offense, the State proceeded to trial on the illegal investment offense. At that trial's conclusion, Fisher changed his plea in the illegal investment case from not guilty to nolo contendere. Approximately two weeks later, the State tried Fisher for the offense of delivery of a controlled substance. Before trial, Fisher again raised his double jeopardy claim, which the trial court had failed to rule on earlier, and asked the trial court to reconsider his motion to suppress. The trial court denied both his motions.

## SUFFICIENCY OF THE EVIDENCE

■ In his third and fourth points of error addressing his illegal investment conviction, Fisher contends that the evidence is insufficient to support his conviction for illegal investment. Fisher argues that he illegally invested funds for less than the fifty pounds of marijuana as alleged in the indictment. Fisher further argues that the

State merely donated the rest of the marijuana to justify his prosecution for an illegal investment and that only subsequent purchases could conceivably bring the purchased amount to over fifty pounds.

■ In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Turner v. State*, 805 S.W.2d 423, 427 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). We must consider all of the evidence, whether properly or improperly admitted. *Deason v. State*, 786 S.W.2d 711, 716 (Tex.Crim. App.1990). We determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Turner*, 805 S.W.2d at 427. This standard applies in both direct and circumstantial cases. *Id.* In a circumstantial evidence case, the "reasonable doubt" portion of the test is satisfied if the evidence excludes every reasonable hypothesis except the appellant's guilt. *Carlsen v. State*, 654 S.W.2d 444, 447 (Tex.Crim.App. 1983) (op. on reh'g).[1] This does not mean that if evidence presented at trial suggests innocence, the trier of fact cannot find the defendant guilty. *Castro v. State*, No. 835–90, slip op. at 3, 1992 WL 1131 (Tex. Crim.App. January 8, 1992). The trier of fact is charged with the responsibility of resolving factual questions. *Id.* In this process, a trier of fact may reject evidence and testimony that suggests innocence. *Id.* The trier of fact is the sole judge of the witnesses' credibility and can believe all or any part of the testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App. 1984).

■ To establish an illegal marijuana investment, the State must prove that Fisher (1) knowingly or intentionally financed or invested funds (2) for which he knew or believed that he would receive more than fifty pounds of marijuana. TEX.HEALTH & SAFETY CODE ANN. §§ 481.121(c) & 481.-

---

1. The Court is aware of the Court of Criminal Appeals' opinion in *Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991), which overrules *Carlsen* and eliminates the "reasonable hypothesis" appellate construct for determining suffi-

ciency. However, *Geesa* expressly applies only to cases tried after November 6, 1991. *Geesa*, 820 S.W.2d at 165. Since this case was tried before November 6, 1991, we will not apply the *Geesa* standard to this case.

126(a)(2) (Vernon Pamph.Supp.1992). The State need not prove that Fisher actually transferred the funds to Officer Pugh. *See Jordan v. State*, 816 S.W.2d 89, 92 (Tex.Crim.App.1991). The State need only show that (1) Fisher intended to finance or invest funds, (2) he had the funds readily available, and (3) he was using them to set up a marijuana purchase. *Id.* "Finance" means "to raise or provide funds or capital for" or "to furnish with the necessary funds," and "invest" means "to commit [money] in order to earn a financial return." *Jordan*, 816 S.W.2d at 92. "Funds" mean "an asset or group of assets set aside for a specific purpose." BLACK'S LAW DICTIONARY 673 (6th ed. 1990).

The record shows that:

(1) Fisher intended to purchase 100 pounds of marijuana from Officer Pugh;

(2) Since Officer Pugh had access to only seventy pounds of marijuana, Fisher agreed to purchase that amount from Officer Pugh;

(3) Although Fisher experienced difficulty in raising the money for the seventy pounds of marijuana, Officer Pugh agreed to take $27,000 as a down payment and to hold the title to a 1987 Camaro and less than twenty-eight grams of methamphetamine as collateral until Fisher sold sixty pounds of the marijuana; and

(4) Fisher said that, after he sold the sixty pounds of marijuana, he would pay Officer Pugh an additional $15,-000, take back the car title and the methamphetamine, and pick up the remaining ten pounds of marijuana.

Viewing this evidence in the light most favorable to the verdict, a rational trier of fact could have found that Fisher used the car and the methamphetamine as collateral to buy the marijuana and that he intended and wanted to purchase all seventy pounds of the marijuana. Because the evidence is sufficient to support his conviction, we overrule Fisher's third and fourth points of error addressing his illegal investment conviction.

## DOUBLE JEOPARDY

■ In Fisher's third point of error addressing his conviction for delivery of a controlled substance, Fisher contends that the trial for his delivery of a controlled substance offends the double jeopardy clause of the United States and Texas constitutions. Fisher argues that the State prosecuted him twice for the same conduct because his delivery of the methamphetamine constituted part of the purchase price for the illegal investment for which the State had already tried and convicted him.

■ When a defendant expressly asks for separate trials, he consents to allow the State to try him in separate proceedings and waives his double jeopardy claim for offenses arising from the severed cases. *Jeffers v. United States*, 432 U.S. 137, 152–53, 97 S.Ct. 2207, 2216–17, 53 L.Ed.2d 168 (1977); *Guzman v. State*, 732 S.W.2d 683, 686 (Tex.App.—Corpus Christi 1987, no pet.). The State wanted to try the illegal investment case and the case for possession of the controlled substance methamphetamine at the same trial. At a pre-trial hearing, Fisher made an oral motion to sever the cases because the State had not given him thirty days' notice of its intent to try the cases together as required under article 3.02(b) of the Texas Penal Code. The trial court granted Fisher's motion, and the State elected to try the illegal investment case first. Because Fisher expressly asked the trial court to sever the illegal investment and the controlled substance offenses into two separate trials, he waived his double jeopardy claim for the offenses arising from the severance. *Guzman*, 732 S.W.2d at 686. We overrule his third point of error addressing his conviction for delivery of a controlled substance.

## MOTION TO SUPPRESS

■ In his first and second points of error, which apply to both convictions, Fisher contends that the trial court erred in overruling his motion to suppress the marijuana evidence introduced at both trials. Fisher argues that the police used the marijuana as bait in violation of section 481.159

of the Texas Health and Safety Code and that no district court order had authorized the use of the marijuana for this purpose. He further argues that these alleged violations of section 481.159 mandated that the trial court exclude marijuana evidence under article 38.23 of the Texas Code of Criminal Procedure. Fisher relies on *Roy v. State*, 608 S.W.2d 645 (Tex.Crim.App.1980), and Attorney General Opinion JM–1166.

■ When the defendant seeks to suppress the evidence on the basis of a Fourth Amendment violation, he carries the burden of proof and must produce evidence that defeats the presumption of proper police conduct. *State v. Wood*, 828 S.W.2d 471, 474 (Tex.App.—El Paso, 1992, no pet. h.). The burden then shifts to the State to rebut the defendant's claims. *Wood*, at 474–75.

The seventy pounds of marijuana that Fisher asked the trial court to suppress came from the Rowlett police department. Jack Grant, Rowlett's Chief of Police, sent the Richardson police department one hundred pounds of marijuana that it had recovered from a drug operation. The Collin County Drug Traffic Force took twenty pounds and the Richardson police department took eighty pounds to conduct undercover drug operations. Of the eighty pounds of marijuana, Officer Pugh used seventy pounds to conduct the Fisher investigation and retained ten pounds for a reserve. Officer Pugh testified that the Rowlett police department authorized the Richardson police department's use of the marijuana for its undercover operation. Officer Pugh further testified that he gave Fisher approximately one quarter of an ounce of marijuana to allow Fisher to test the marijuana for its quality.

If a law enforcement agency or officer wants to use controlled substances, which the agency or officer has obtained through seizure and forfeiture proceedings, in a future sting operation, the agency or officer must obtain a district court order. *See* TEX.HEALTH & SAFETY CODE ANN. §§ 481.-153(b) & 481.159(a)(1) (Vernon Pamph.Supp. 1992). A law enforcement agency or officer is not required to obtain a court order if the agency or the officer obtained the controlled substance in some manner other than by seizure and forfeiture. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.153 & 481.159(a)(1) (Vernon Pamph.Supp.1992).

■ Fisher argues that the police in this case are subject to section 481.159 and must get a court order to use the marijuana for undercover drug operations. Fisher, therefore, must show that the seventy pounds of marijuana was seized and forfeited. Fisher, however, fails to show this Court that the marijuana was seized by and forfeited to the Rowlett police department. The record is silent on how the Rowlett police got the marijuana and whether the marijuana was subject to a court order. The burden is on the party seeking reversal to bring forth a sufficient record to show error requiring reversal. *See* TEX.R.APP.P. 50(d). When the record is incomplete, this Court cannot determine if error has occurred because it lacks the evidence needed to make its decision. *See Marras v. State*, 741 S.W.2d 395, 406 (Tex.Crim.App.1987); *Callahan v. State*, 814 S.W.2d 420, 423 (Tex.App.—Houston [1st Dist.] 1991, no pet.). This Court cannot determine from the record before us how the Rowlett police department got the marijuana, and whether the marijuana used was forfeited and subject to section 481.159.

■ Assuming arguendo that Fisher has shown that section 481.159 is applicable to his case, we hold that the exclusionary rule does not apply. Section 481.159 provides the proper method for law enforcement officials to use forfeited, controlled substances in their investigation of drug offenses. TEX.HEALTH & SAFETY CODE ANN. § 481.159(a)(4) (Vernon Pamph.Supp.1992); *Lopez v. State*, 817 S.W.2d 150, 153 (Tex. App.—El Paso 1991, no pet.). Article 38.-23(a) of the Texas Code of Criminal Procedure (the exclusionary rule) applies to police misconduct in *illegally obtaining* evidence, such as through improper search and seizure. *Roy v. State*, 608 S.W.2d 645, 651 (Tex.Crim.App.1980); *Lopez*, 817 S.W.2d at 152–53. Fisher makes no claim that the marijuana was seized through an illegal search and seizure. Further, he

cites this Court to no relevant authority, nor have we found any, that shows that the police's improper use of forfeited, controlled substances in drug investigations relates to the police illegally obtaining evidence under the exclusionary rule. This Court concludes that section 481.159 has nothing to do with the exclusionary rule. *See Roy*, 608 S.W.2d at 651. Because we cannot determine whether the marijuana was forfeited and subject to section 481.-159, and the exclusionary rule is not applicable to Fisher's case, the trial court did not err in overruling his motion to suppress. We overrule Fisher's first and second points of error.

We affirm the trial court's judgment.